STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher D. SLOAN, Defendant-Appellant.

Court of Appeals

*No. 2006AP1271–CR. Submitted on briefs February 27, 2007.
—Decided May 15, 2007.*

2007 WI App 146

(Also reported in 736 N.W.2d 189.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas E. Hayes* of *Law Offices of Thomas E. Hayes* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christopher G. Wren*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. Christopher D. Sloan appeals from a judgment of conviction entered on a guilty plea after denial of his motion to suppress material seized from a box he deposited at a United Parcel Service (UPS) facility in Waukesha County because no warrant was obtained, and to suppress material seized later from a residence in Milwaukee County pursuant to a search warrant. We affirm the denial of the motion to suppress the material contained in the box at the UPS facility because no warrant was required as the material was not originally discovered by a government agent; however, we reverse the denial of the motion to suppress material seized in the residential search because we conclude that the affidavit in support of the search warrant did not establish probable cause to believe a nexus existed between the items sought and the residence searched.

## Background

¶ 2. On January 4, 2005, Christopher Sloan took a box to the UPS station in Elm Grove, Wisconsin to ship to "Dave Slaon" [sic] in Florida. "Chris Sloan" was listed as the sender with a return address of 1005 South 114th Street, West Allis, Wisconsin. The UPS counter surveillance video recorded Sloan's transaction. UPS has a sign posted that reserved the right of UPS to open any parcels shipped. Sloan aroused the suspicion of the UPS counter clerk because, according to the clerk, he did not

want anyone to inspect the package, and he wanted to ship the package with next day delivery to himself in Florida in spite of the fact that this was very expensive. Sloan told the clerk he had shipped this way before.

¶ 3. After accepting the box from Sloan, the counter clerk took the box to her supervisor in the UPS back office, who opened the box, which contained toys, pictures and a plastic canister. The supervisor then also opened the canister. This supervisor thought the package looked suspicious and took it to the UPS security supervisor, Michael Weber. Weber looked in the open box and found an opened canister that had previously been sealed with silver duct tape. Weber thought the canister contained marijuana, but he did not smell marijuana. He called the Elm Grove Police Department to report the package with the possible marijuana. Weber took pictures of the box, he believes, after the police confirmed it contained marijuana.

¶ 4. Sergeant Jason Hennen of the Elm Grove Police Department went to the UPS facility where he was shown the box in question. The box had been opened, but had one or more flaps closed when he arrived. Hennen testified that Weber handed him the canister with the duct tape. Weber testified that he showed Hennen the opened box with the canister still in the box. The canister was heavy duty plastic, partially closed but the lid was not on tight. Hennen recognized the odor of marijuana. He took the lid off of the canister, saw a plastic bag inside which contained a green leafy substance, suspected marijuana, and did a field test on the substance which confirmed that the substance was marijuana.

¶ 5. Further investigation ensued. Hennen's affidavit in support of a search warrant describes additional information he obtained by the following day,

January 5, 2005. Hennen described viewing the UPS videotape of the person shipping the package, learning that Christopher Sloan had a Florida driver's license with a photograph, determining that the license photo was of the same person Hennen saw on the UPS videotape, and determining that the person in the videotape was same person who was depicted in a photograph contained in the box. In addition, Hennen learned that Wisconsin Department of Transportation records[2] listed Sloan's residence as 1005 South 114th Street in West Allis, which is the same address listed as the return address on the package. Hennen also described information from WE Energies that Christopher Sloan had paid the utilities at the 1005 South 114th Street residence. The residence is owned by Leslee Ericksen, born October 19, 1957, who Wisconsin DOT records show was formerly known as Leslee J. Sloan.[3] Sloan was born February 26, 1982.

¶ 6. Based on this investigation, which included evidence seized pursuant to the search warrant issued for 1005 South 114th Street, Sloan was charged with one count of manufacture of a controlled substance—tetrahydrocannabinols (marijuana) (more than twenty but not more than fifty plants), in violation of WIS. STAT. §§ 961.14(4)(t) and 961.41(1)(h)3. (2003–04).[4] Sloan moved to suppress the admission of evidence from both the search of the box and from the search warrant issued for his residence. After a hearing, the trial court

---

[2] There is no reported reference to Sloan having a current Wisconsin driver's license.

[3] The criminal complaint in this case lists Sloan's date of birth as February 26, 1982. One might reasonably infer that the former Leslee Sloan is the defendant's mother or other relative.

[4] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

denied the motion. Thereafter, Sloan pled guilty and was sentenced. Sloan has appealed his judgment of conviction and sentence.

## Standard of Review

¶ 7. We review a motion to suppress applying a two-step standard of review. *State v. Eason*, 2001 WI 98, ¶ 9, 245 Wis. 2d 206, 629 N.W.2d 625. "First, we review the [trial] court's findings of historical fact, and will uphold them unless they are clearly erroneous. Second, we review the application of constitutional principles to those facts *de novo.*" *Id.* (citations omitted).

¶ 8. In reviewing whether probable cause exists to issue a search warrant, we give great deference to the warrant-issuing magistrate. *See State v. Kerr*, 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994). We are confined to the record as it existed before the magistrate and must consider whether he or she was " 'apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched.' " *Id.* at 378 (quoting *State v. Starke*, 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978)). The magistrate's decision to issue a warrant will be upheld unless the facts before the magistrate at the time the warrant was issued were " 'clearly insufficient to support a finding of probable cause.' " *Id.* at 380 (quoting *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991)); *see also State v. Meyer*, 216 Wis. 2d 729, 742, 576 N.W.2d 260 (1998). We consider the search of the box and of the residence separately.

## A. SEARCH OF THE BOX

**Did the police search of the box exceed the scope of the private search?**

¶ 9. Sloan argues that a warrant was required for the police to search the box because Hennen exceeded the scope of the UPS search. Sloan does not dispute the original search by UPS was a private-party search. The trial court found that the police did no more than replicate the UPS search of the box and the container. Further, the trial court found that inconsistencies between the testimony of Weber and Hennen (whether some, all, or none of the flaps on the box were open when Hennen first saw the box; whether the container was in the box when Hennen arrived or was handed to Hennen by Weber) were not material and were nothing more than normal failures of human recollection. The evidence supports that inference. When supported by evidence, the trial court is free to determine which of conflicting inferences to choose. *State v. Friday*, 147 Wis. 2d 359, 370–71, 434 N.W.2d 85 (1989) ("The drawing of an inference . . . when more than one inference is possible is a finding of fact which is binding upon an appellate court. It is not within the province of . . . any appellate court to choose not to accept an inference drawn by a factfinder when the inference drawn is a reasonable one.").

¶ 10. A private party's discovery, and subsequent disclosure to law enforcement, of contraband is not prohibited by the Fourth Amendment where there is not a reasonable expectation of privacy in dealings with the private party. *See United States v. Jacobsen*, 466

U.S. 109, 113, 115 (1984). One does not generally have a reasonable expectation of privacy when delivering property to a private shipping company, particularly when the shipping company posts a sign reserving its right to inspect parcels left with it for shipping. *See id.* at 117–18.

¶ 11. In *Jacobsen*, a Federal Express employee discovered a white powdery substance concealed in a plastic tube that was contained in a damaged shipping package. *Id.* at 111. Rejecting Jacobsen's arguments of an expectation of privacy protected by the Fourth Amendment, the Court held that an employee of a private company was not acting on behalf of the government, and therefore was free to disclose the package and material to law enforcement. *Id.* at 115. The Court further held that law enforcement, without a warrant and without violating the Fourth Amendment, could properly replicate the search the Federal Express employees had already conducted. *Id.* at 119–20 ("[T]he [governmental] agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment."). Additionally, the Court held that law enforcement could properly field test the substance so obtained to determine whether it was, in fact, contraband. *Id.* at 123.

¶ 12. Wisconsin courts addressed a case with very similar facts well before the *Jacobsen* decision. In 1968, our supreme court, in *State v. Beal*, 40 Wis. 2d 607, 162 N.W.2d 640 (1968), refused to suppress a search where the warrant was based upon police observation of possible contraband that was disclosed to police by postal authorities. *Id.* at 615. In *Beal*, a United States postal inspector in the Milwaukee Post Office observed a substance leaking from a first-class parcel addressed to Beal at a Platteville, Wisconsin address. *Id.* at 611.

448

The inspector believed the leaking substance to be marijuana. *Id.* The leaking parcel was put in a large envelope and mailed by postal employees to the postmaster at Platteville. *Id.* The Platteville assistant postmaster opened the outer envelope in the presence of the Platteville Chief of Police. *Id.* The chief of police observed the shredded material trickling out of the damaged package; the chief was allowed to put some fluorescent powder on the outside of the package for identification purposes, but was not permitted to open the package, to probe into it, or to take any of the material which had leaked out. *Id.* The police chief relayed his observations to the district attorney. *Id.* The district attorney then swore to an affidavit in support of a search warrant issued for the residence to which the parcel was addressed, and to which the parcel was in fact delivered. *Id.* at 611–12.

¶ 13. In a motion to suppress the items seized as a result of the ensuing search, Beal contended, among other arguments,[5] that examination of the damaged package in Milwaukee was an unreasonable search, and that the later observations by the chief of police at the Platteville Post Office was, likewise, an unreasonable

[5] An issue in *State v. Beal*, 40 Wis. 2d 607, 162 N.W.2d 640 (1968), which is not involved here, was whether the postal inspector and sheriff violated a federal statute prohibiting opening another party's mail. *Id.* at 616–17. The *Beal* court concluded that the parcel had not been opened, but was damaged in shipping, thus no violation of the federal statute occurred. *Id.* at 616. The presence of the federal statute applicable to material in the custody of the United States Postal Service, and the law enforcement status of the postal inspector perhaps explains the difference in how the leaking package in *Beal* was treated as compared to the leaking package in *Jacobsen* which was found at a private shipping company, Federal Express.

search. *Id.* at 616. There was no claim in *Beal* of a lack of nexus between the residence to be searched and the marijuana sought; rather, the suspected marijuana was actually delivered to the residence searched. *Id.* at 611. Our supreme court rejected the assertion that either the Postal Service's or the police chief's observations of the leaking material was unreasonable, noting that "[i]t is not a search to observe what is in plain view." *Id.* at 616 (quoting *Edwards v. State*, 38 Wis. 2d 332, 338, 156 N.W.2d 397 (1968)). The *Beal* court also held that the district attorney's affidavit established probable cause because it disclosed the source of the district attorney's information and knowledge, as well as the qualifications and credibility of the informer. *Id.* at 615.

¶ 14. In this case, a UPS counter clerk suspected that Sloan may be attempting to ship contraband based upon her observation of Sloan's conduct, including his next day shipment to himself from Wisconsin to Florida and his unwillingness to allow her to look into his box. The counter clerk took the package into her supervisor and pursuant to the posted notice of UPS's right to inspect any package left with it for delivery, the UPS employees opened the box and the duct-taped canister in the box. Upon finding what they thought was marijuana, the UPS supervisor took the package to the security supervisor who looked into the box and called the police. Upon his arrival, Hennen looked at the package, smelled the odor of marijuana, conducted a field test for THC which confirmed that the substance in the canister was marijuana, and Hennen then confiscated the package as contraband. Sloan does not argue that UPS employees had not already opened both the box and the canister holding the marijuana by the time Weber took control of the box and contacted police.

¶ 15. As noted above, a warrantless search conducted by a governmental agent that goes beyond the search conducted by the private party providing the package to law enforcement may be unconstitutional. *Jacobsen*, 466 U.S. at 115. Here, however, the only thing Hennen did, which UPS employees had not done, was to perform the field test to confirm that the material was marijuana. As we know from *Jacobsen*, that is permissible conduct by law enforcement. *Id.* at 123. Under the facts of *Jacobsen*, and the nearly identical facts here, the Fourth Amendment was not violated by Hennen's conducting the field test to determine whether the material was, or was not, marijuana. We conclude that Hennen properly replicated the search already conducted by UPS employees and, under *Jacobsen*, did not move into an unreasonable search when he did the field test. *See id.* at 123 ("A chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy. This conclusion is not dependent on the result of any particular test.").

¶ 16. Based upon the teachings of *Jacobsen* and *Beal*, we conclude that the UPS employees had the authority to examine what they considered to be a suspicious package, that they could properly contact law enforcement about their findings, and that law enforcement was authorized to replicate the search already conducted by UPS. We conclude that law enforcement (*i.e.*, Hennen's search of the package) did not exceed the scope of the private-party search conducted by the UPS employees. Based upon the foregoing, we affirm the trial court's decision with respect to search of the box left with UPS.

## B. SEARCH OF THE RESIDENCE: VALIDITY OF SEARCH WARRANT

### 1. Was the affidavit in support of the search warrant a deliberate falsity or made in reckless disregard for the truth?

¶ 17. In *Franks v. Delaware*, 438 U.S. 154, 165 (1978), the Court held that in order to impeach an affidavit supporting a search warrant, and thus suppress evidence seized, the person challenging the search must show that the affidavit contains "a deliberate falsity or reckless disregard" for the truth. *Id.* at 171. Sloan argues here that the trial court erred in not allowing an evidentiary hearing for the purpose of establishing that Hennen's affidavit contained facts about his examination of the box that were not true, and that the facts were asserted in reckless disregard of whether they were true. With respect to the *Franks* issue, the trial court noted in its December 5, 2005 oral decision on Sloan's motion to suppress that it did "[not] see anything here that would lead [the trial court] to believe that there was a reckless disregard for the truth on the part of law enforcement."

¶ 18. At the hearing on the motion to suppress, there was some inconsistent testimony between UPS employee Weber, and Hennen. Hennen testified at the suppression hearing, when discussing the box, that Weber had "already opened it," that when he first saw the box he believed "two of the flaps were open, and [Hennen] opened the third flap." Hennen also testified that he believed that the marijuana container was already out of the box, was handed to him by Weber, and the lid of the canister was not on tight. Hennen did not recall any pictures being taken while he was at UPS.

¶ 19. Weber testified that the part-time supervisor opened the box, and partially opened the canister that was sealed with duct tape. Weber testified that the lid of the canister was sufficiently open such that he could see what looked like marijuana in the canister. Weber took pictures of the box (with the flaps closed) showing the shipping label. Weber remembers taking the pictures after Hennen arrived and had confirmed the plant substance in the canister was marijuana.

¶ 20. Regardless of which recollection is correct, neither version disputes the actions of the UPS counter clerk and the supervisor who opened the box and discovered the plastic canister with suspicious material, *before* reporting the matter to Weber. Whether Weber later closed the flaps or left them open, whether he returned the plastic canister to the box, or handed it to Hennen, or when he took the pictures of the box, does not reduce the scope of the search already conducted by UPS employees. *See Jacobsen*, 466 U.S. at 119–20.

¶ 21. The trial court concluded the differences were immaterial failures of recollection. "We will not reverse a factual determination made by a trial court without a jury unless the finding is clearly erroneous." *Seater Constr. Co. v. Rawson Plumbing, Inc.*, 2000 WI App 232, ¶ 17, 239 Wis. 2d 152, 619 N.W.2d 293. The trial court is the sole arbiter of credibility issues and will be sustained if facts in the record support the court's conclusions. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643–44, 340 N.W.2d 575 (Ct. App. 1983) (" '[T]he trial judge is the ultimate arbiter of the credibility of the witnesses. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact.' ") (quoting *Cogswell v. Robertshaw Controls Co.*,

87 Wis. 2d 243, 249–50, 274 N.W.2d 647 (1979)). There is evidence from which the trial court's inferences can be drawn and the trial court is entitled to draw such inferences. *See Friday*, 147 Wis. 2d at 370–71. The record supports the trial court's inference that the inconsistencies are the result of a mere failure of recollection, as well as the trial court's conclusion that there is no showing that Hennen made a deliberate falsity or recklessly disregarded the truth when he made the statements contained in his affidavit supporting the search warrant.

¶ 22. On appeal, Sloan argues that the trial court erred when it did not provide Sloan with a *Franks* hearing. In fact, the trial court informed Sloan that he was not precluded from supplementing the record if he believed that there were other facts that warranted a *Franks* hearing. Sloan made no request to supplement the record, nor was there ever a subsequent request for such a hearing. The court is not required to provide a separate, subsequent hearing when one has not been specifically requested.

### 2. Was there probable cause for the search warrant for the residence?

¶ 23. Wisconsin Stat. § 968.12(1), states that "[a] judge shall issue a search warrant if probable cause is shown [in the complaint]." "Probable cause exists when a magistrate is 'apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, *and that the objects sought will be found in the place to be searched.'*" *State v. Edwards*, 98 Wis. 2d 367, 373, 297

N.W.2d 12 (1980) (quoting *Starke*, 81 Wis. 2d at 408) (emphasis added). "The quantum of evidence necessary to support a determination of probable cause for a search warrant is less than that required for conviction or for bindover following a preliminary examination . . . . The affidavit is to be read in a commonsense, not a hypertechnical, fashion." *Ritacca v. Kenosha County Court*, 91 Wis. 2d 72, 77–78, 280 N.W.2d 751 (1979) (citations omitted). Probable cause is "more than a possibility, but not a probability, that the conclusion is more likely than not." *State v. Tompkins*, 144 Wis. 2d 116, 125, 423 N.W.2d 823 (1988).

¶ 24. The existence of probable cause for a search warrant is determined by applying the "totality-of-the-circumstances" test adopted by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 231 (1983). In *Gates*, the Court ruled that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . a fair probability [exists] that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. "Elaborate specificity is not required, and the officers are entitled to the support of the usual inferences which reasonable people draw from facts." *State v. Marten*, 165 Wis. 2d 70, 75, 477 N.W.2d 304 (Ct. App. 1991) (citation omitted).

¶ 25. In *Beal*, as we have discussed, the U.S. Postal Service discovered a parcel addressed to Beal leaking what appeared to be marijuana and shared that information with the police chief who shared it with the local district attorney. *Id.*, 40 Wis. 2d at 611. The affidavit sworn to by the district attorney, in support of the warrant to search Beal's residence (where the marijuana was delivered), was challenged as not being sufficiently specific to establish probable cause because

the affiant relied on hearsay.[6] *Id.* at 615. Because the affidavit disclosed not just the qualifications and credibility of the informer (a U.S. postal inspector), but also sufficiently described the source of the district attorney's information and knowledge, the *Beal* court held that there was a substantial basis for the magistrate to credit the hearsay and find probable cause. *Id.*

¶ 26. The trial court here did not find a nexus in the affidavit between the items sought and the house to be searched. Nonetheless, the trial court concluded, in deference to the judge who signed the warrant, that "[t]here's the good faith exception here. If I were confronted with this affidavit, I think I would have issued the warrant."

¶ 27. The good faith exception to which the trial court refers is a doctrine that applies to police officers who execute a search warrant in the mistaken belief that it is valid, *see United States v. Leon*, 468 U.S. 897, 918–20 (1984), or who take some other action based upon facts the officers believe to be true, although some time later proved the belief to have been incorrect, *see,*

---

[6] The hearsay language the court described was:

Complainant is the District Attorney for Grant County, Wisconsin, duly elected, qualified and acting. On Monday, October 23rd complainant was informed that the parcel described above had been seen by a reliable informer while in the U.S. Mail in Milwaukee, Wisconsin, and that said parcel had been damaged and the contents thereof were leaking out; that said informer is an employee of the U.S. of America, charged with duties of law enforcement and stated that he believes the contents of such package are marijuana; that said informer is acquainted with marijuana and knows its appearance in processed form; that said informer believed that the contents of such package were marijuana because of the odor, because of the presence of certain small seeds therein and because of the color and shredded form of the leaves. . . .

*Beal*, 40 Wis. 2d at 615.

*e.g., State v. Collins*, 122 Wis. 2d 320, 325–27, 363 N.W.2d 229 (Ct. App. 1984). We presume that all judges or commissioners passing on search warrant applications are acting in good faith. However, that is not the test for probable cause. *See Ritacca*, 91 Wis. 2d at 77–78 (The ultimate test for the issuance of a search warrant is whether there is probable cause to believe that the objects sought are linked to the commission of a crime and whether those objects are likely to be found in the place designated in the search warrant.). "Good faith" is not a doctrine that absolves the neutral and detached judge or magistrate from a careful, critical and independent analysis of the facts presented when exercising the responsibility of determining whether probable cause for a search warrant exists. *See Leon*, 468 U.S. at 914. Because the trial court did not apply the correct law in deciding the motion to suppress, we have reviewed the record to determine whether the record supports a finding of probable cause to issue the search warrant. *See Stan's Lumber, Inc. v. Fleming*, 196 Wis. 2d 554, 573, 538 N.W.2d 849 (Ct. App. 1995).

¶ 28. Hennen obtained a warrant to search the address Sloan listed as the package's *return* address—not, as in *Beal* and *Jacobsen*, the address to which the package containing a controlled substance was sent. Hennen averred that the following items were at the return address which would be evidence of the following crimes: possession of marijuana with intent to manufacture, distribute or deliver, violating Wis. Stat. § 961.41(1m)(h); distribution or delivery of marijuana, violating § 961.41(1)(h); possession of marijuana, violating § 961.41(3g)(e); maintaining a drug house, violating Wis. Stat. § 961.42; possession of drug paraphernalia, violating Wis. Stat. § 961.573(1); and manufacture of marijuana, violating § 961.41(1).

457

¶ 29. As facts to support probable cause to believe that evidence of these crimes would be found at this specific residence, Hennen, by affidavit, described his training and experience: eight years in law enforcement, training at various listed institutions in identifying controlled substances and in investigating individuals "believed to be involved in personal use and/or trafficking of controlled substances" and involvement in "more than 100 investigations relating to individuals possessing and/or trafficking controlled substances." Hennen then described the events the previous day at the UPS facility,[7] his observation of the canister containing what he believed was marijuana, his field test determining that the material was, in fact, marijuana, and his determination that the bag of marijuana weighed twenty-one grams.[8] Hennen also indicated that Sloan has a driver's license in Florida, unspecified Wisconsin Department of Transportation records listed Sloan's residence at 1005 South 114th Street, two vehicles parked in the driveway of 1005 South 114th were registered in Wisconsin to Sloan, and though Sloan did not own the residence at 1005 South 114th Street, he has received utility services there.

¶ 30. Hennen concluded his affidavit with the statement:

> [T]hrough his training and experience . . . he is aware that individuals who are involved in purchasing and trafficking controlled substances usually keep records of the transactions in which they are involved. Often,

---

[7] These include the UPS employee's report of Sloan's statements that he wanted to ship the package for next day delivery because he was going to Florida, he wanted it there when he arrived, and he had shipped in that fashion before.

[8] This is approximately three-quarters of an ounce of marijuana (21 grams = 0.740 ounces).

those records are kept in paper documents, however, they are also often kept in various electronic devices, such as pagers, cell phones, and computers.

¶ 31. What Hennen does *not* describe in his affidavit is critical to our analysis. He never tells the reader that he believes Sloan is, or has recently been, engaged in any criminal activity at the residence to be searched, or why he believes that is the case. To establish probable cause to support this warrant, there must be some factual connection between the items that are evidence of the suspected criminal activity and the address to be searched. "Probable cause to believe that a person has committed a crime does not *automatically* give the police probable cause to search his house for evidence of that crime." *State v. Marquardt*, 2005 WI 157, ¶ 81, 286 Wis. 2d 204, 705 N.W.2d 878 (quoting *Higginbotham*, 162 Wis. 2d at 995). "[P]robable cause cannot be upheld . . . if the affidavit provides nothing more than the legal conclusions of the affiant." *Kerr*, 181 Wis. 2d at 378 (citing *Higginbotham*, 162 Wis. 2d at 992).

¶ 32. Hennen does not describe surveillance that shows anything about the house that suggests criminal activity might be afoot. Surveillance disclosed only the general configuration of the house (square), where the street number is located (by the front door, above the mailbox), and that two vehicles registered to Sloan were parked at that address. There is no report that anyone was observed at the address. There is no claim of prior police reports of drug sales or other suspicious activity at that address, nor is there evidence of Sloan's prior actual or suspected involvement with marijuana or other controlled substances. Hennen does not claim that Sloan fits any relevant profile of someone involved in the manufacture, sale or distribution of marijuana or

other controlled substances.[9] The owner of the residence was not Sloan. There is no evidence that police interviewed the owner or did any investigation to discover drug-related activity at that address. Indeed, if Sloan's statement to UPS was to be believed, it was unlikely that contraband would be found at the residence since he said he was leaving for Florida the next day. Nothing in the affidavit provides a reasonable factual basis upon which to conclude that a crime had been or likely would be committed at the residence, or that there was evidence of a crime at the residence. No facts were provided in Hennen's affidavit which tend to show where Sloan acquired or packed the marijuana he attempted to ship with UPS.

¶ 33. As to the warrant, it authorized a search of the return address identified on the box left with UPS described as "a one story, single family residence with a square shape, with address 1005 displayed above the mailbox near the front door, as well as a detached garage and all vehicles associated with the residence, all with street address 1005 South 114th Street, West Allis, Wisconsin." In addition, the search warrant stated "there are now located and concealed certain things, to wit":

> Paraphernalia associated with the personal use of marijuana, including but not limited to scales, plastic bags for packaging, marijuana cigarette rolling papers, marijuana pipes made of stone, wood or metal;

---

[9] *See State v. Lindgren*, 2004 WI App 159, ¶¶ 18–20, 275 Wis. 2d 851, 687 N.W.2d 60. The *Lindgren* court held that because the affidavit included a detailed profile of a child molester which provided sufficient justification for a search of the home, the search of the home of the defendant who took nude photographs of a minor employee at his business was supported by probable cause.

Water pipes or bongs used for smoking marijuana;

Clips for holding marijuana cigarettes;

Documentation and other items of personal property tending to show who is in control of the premises;

Records regarding the purchase, distribution and manufacture of marijuana, tending to identify persons involved in the sale, distribution and/or manufacture of marijuana;

. . . .

Any electronic devices such as pagers, cell phones, computers, along with the content of any computer hard drive, peripheral or electronic data storage device associated with any computer;

Paraphernalia associated with the manufacturing of marijuana, including, but not limited to lights, fans, timers, growing medium, fertilizer or items used for the drying of marijuana.

¶ 34. The first three items sought, "[p]arapherna-lia associated with the personal use . . . water pipes . . . and clips for holding marijuana cigarettes" would be evidence of the crime of possession of marijuana, violating WIS. STAT. § 961.41(3g)(e). The affidavit certainly contains probable cause to believe Sloan possessed marijuana in Elm Grove at the UPS facility. But it provides no facts to link his Elm Grove possession to the West Allis residence.[10] There is no evidence Sloan had the marijuana at the West Allis residence before

[10] The affidavit reference to Sloan paying utility bills at the residence in the past, and observation of two cars registered in his name at the residence, even with his use of the address as the return address for the UPS package (although that is not mentioned in the affidavit), supports the reasonable inference

461

taking it to UPS, no evidence that anyone had ever seen him with marijuana at the West Allis residence, and no evidence that he had possessed marijuana in his vehicles at the West Allis residence.

¶ 35. A search for "documentation and other items of personal property tending to show who is in control of the premises" might well be related to the crime of maintaining a drug house, violating Wis. Stat. § 961.42, but no facts in the affidavit suggest this is a drug house. There is no description of how one might identify a drug house, or that any suspicious activity as to the West Allis residence has been observed by, or reported to, law enforcement.

¶ 36. Discovery of "records regarding the purchase, distribution and manufacture of marijuana, tending to identify persons involved in the sale, distribution and/or manufacture of marijuana, and electronic devices such as pagers, cell phones, computers, computer hard drives, peripheral or electronic data storage devices associated with any computer" would be evidence of the crimes of possession of marijuana with intent to manufacture, distribute or deliver, violating Wis. Stat. § 961.41(1m)(h), distribution or delivery of marijuana, violating § 961.41(1)(h); or maintaining a drug house, violating Wis. Stat. § 961.42. However, no facts in the affidavit give reason to believe that those items are actually in the West Allis residence.

¶ 37. Finally, discovery of "paraphernalia associated with the manufacturing of marijuana, including, but not limited to lights, fans, timers, growing medium, fertilizer or items used for the drying of marijuana" would be evidence of manufacture of marijuana, violat-

---

that Sloan has some connection with that address, but does not support reasonable inferences beyond that limit.

ing WIS. STAT. § 961.41(1) or possession of marijuana with intent to manufacture, distribute or deliver, violating § 961.41(1m)(h). But, again, the affidavit provides no facts on which to base a reasonable belief (probable cause to believe) that those activities are occurring or have occurred at the West Allis residence, or that the described items are located at the West Allis residence.

¶ 38. In short, the affidavit tells the reader what Hennen believes a drug trafficker does by way of recordkeeping, but gives the reader no reason to conclude Sloan is a drug trafficker, or that other people traffic in drugs at that residence. If the affidavit here is sufficient to establish probable cause for an expansive residential search, then a similar search of a residence, after a person is found in possession of a small quantity of marijuana or other controlled substance, would be permitted with nothing more to support the search than a return address on a document, and vehicle registration at that address. Such an outcome would dilute the Fourth Amendment requirements of reasonableness and probable cause to the strength of mist or vapor. Some of the missing facts might have been developed with more investigation (or a controlled delivery of the package, as in *Beal*) and then used to established a factual link sufficient to support probable cause for a search of the residence. Unfortunately, perhaps in a rush to obtain a warrant, no such facts were developed. The lack of any factual connections between crimes by Sloan or others and the residence to be searched is fatal to a finding of probable cause. Consequently, we reverse that portion of the trial court's decision upholding the search warrant.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded for further proceedings.

¶ 39. FINE, J. (*dissenting*). I respectfully dissent from the Majority's conclusion that the police officer's affidavit was insufficient to establish probable cause that Christopher D. Sloan, who had just tried to ship marijuana from a return address, had marijuana-contraband at that address. Common sense tells us that any substance—whether contraband or not—does not just materialize out of thin air; it has to come from someplace, where it is either made, grown, or stored.

> When analyzing probable cause to search, "the proper inquiry is whether evidence of a crime will be found. The quantum of evidence required to establish probable cause to search is a 'fair probability' that contraband or evidence of a crime will be found in a particular place." Whether probable cause for a search exists is determined by analyzing the totality of the circumstances. "The test is objective: what a reasonable police officer would reasonably believe under the circumstances . . . ." Probable cause is assessed by looking at practical considerations on which reasonable people, not legal technicians, act. Probable cause does not mean more likely than not. It is only necessary that the information support a reasonable belief that guilt is more than a possibility.

*State v. Erickson*, 2003 WI App 43, ¶ 14, 260 Wis. 2d 279, 288, 659 N.W.2d 407, 411–412 (quoted sources and citations omitted; ellipsis by *Erickson*).

¶ 40. Here it was perfectly reasonable and proper for the judicial officer who issued the search warrant to conclude that there was a "fair probability," that is, "probable cause," to believe that Sloan's return address, which was where he lived, was the place from where the marijuana had come, and that there was a "fair probability," which, as we have seen, does not require a

"more likely than not" showing, that some marijuana contraband was still there. I would affirm and, accordingly, respectfully dissent.