COURT OF APPEALS
DECISION
DATED AND FILED

October 31, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP157-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2020CT663**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

MICHAEL PRUETT RUDOLF,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: MARK G. SCHROEDER, Judge. *Affirmed*.

¶1 HRUZ, J.[1] Michael Rudolf appeals a judgment of conviction for operating a motor vehicle while having a prohibited alcohol concentration (PAC), as a third offense. Rudolf argues that the circuit court erred by denying his

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

suppression motion because the police officer who stopped Rudolf's vehicle lacked reasonable suspicion to believe that he was acting unlawfully. We conclude the officer had reasonable suspicion that Rudolf was operating while intoxicated, and the court, therefore, did not err by denying Rudolf's suppression motion. Accordingly, we affirm.

## BACKGROUND

¶2  At approximately 10:40 p.m. on August 6, 2020, Rudolf was driving an SUV when Officer Joshua Kislewski saw Rudolf's vehicle swerve over the fog line in the road and nearly strike the curb. Kislewski began following Rudolf and then saw Rudolf's SUV continue to swerve and almost strike the curb a total of six or seven times. Rudolf then drove for approximately three-quarters of one mile without incident or other moving violation before pulling into the parking lot of a closed car dealership and stopping in the middle of the lot. Kislewski thought it "odd" and suspicious that the driver pulled into the parking lot of a closed business at that time of night and stopped there, given that he had not yet initiated a traffic stop.

¶3  Kislewski then detained Rudolf in the parking lot and spoke with him. Rudolf explained that the dealership was his father's, but he could not provide a reason why he was there at that time. Kislewski saw that Rudolf's eyes were glassy and bloodshot, and he noted that Rudolf was slow to respond to Kislewski's questions. Rudolf attempted to perform, but failed, field sobriety tests, and he was subsequently arrested for operating a motor vehicle while intoxicated (OWI), as a third offense. A blood test later revealed that Rudolf's blood alcohol level was 0.224 g/ 100 mL, and the complaint was amended to add a charge of operating with a PAC.

¶4　Rudolf moved to suppress the evidence that was obtained following his detention, alleging that his Fourth Amendment rights were violated because Kislewski lacked reasonable suspicion that Rudolf had violated or was violating any law in order to detain Rudolf. The circuit court held an evidentiary hearing, and, following additional briefing by the parties, the court found Kislewski's testimony credible and concluded that there was reasonable suspicion to perform the traffic stop. Rudolf subsequently pled no contest to the PAC charge.[2] Rudolf now appeals, challenging the denial of his suppression motion.

## DISCUSSION

¶5　Rudolf argues that the evidence obtained following the traffic stop should be suppressed because Kislewski lacked reasonable suspicion to detain Rudolf and his vehicle. In particular, Rudolf argues that driving over a fog line is not a cognizable violation of the Wisconsin Traffic Code and that his driving, when viewed in total, does not give rise to reasonable suspicion to perform an investigatory stop. We conclude that the totality of the circumstances—i.e., Rudolf's repeated swerving and near hitting of the curb, the time of day, along with his odd behavior of stopping in the middle of a closed business's parking lot—gave rise to reasonable suspicion that Rudolf was operating a motor vehicle while intoxicated. Consequently, we need not address Rudolf's argument that driving over a fog line is not itself a cognizable violation of the Wisconsin Traffic Code. *See **Turner v. Taylor**, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673

---

[2] Pursuant to WIS. STAT. § 346.63(1)(c), the OWI charge was ultimately dismissed after Rudolf's no-contest plea to the PAC charge.

N.W.2d 716 (we need not address all issues raised by the parties if one is dispositive).

¶6 "Whether there is … reasonable suspicion to stop a vehicle is a question of constitutional fact." *State v. Popke*, 2009 WI 37, ¶10, 317 Wis. 2d 118, 765 N.W.2d 569. Here, Rudolf admits that the underlying facts are undisputed. Whether the undisputed facts meet the relevant constitutional principles is a question of law that we review de novo. *Id.*

¶7 "[A]n officer may make an investigative stop if the officer 'reasonably suspects' that a person has committed or is about to commit a crime or reasonably suspects that a person is violating the non-criminal traffic laws." *County of Jefferson v. Renz*, 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999) (footnote omitted; citation omitted). An officer's reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (footnote omitted). The reasonableness of an investigatory stop depends on the totality of the circumstances. *State v. Richardson*, 156 Wis. 2d 128, 139-40, 456 N.W.2d 830 (1990).

¶8 Turning to the totality of the circumstances that existed before the detention, we note at the outset that we are naturally—and strongly—influenced by the credited testimony that Rudolf was driving his vehicle in a widely and repeatedly meandering manner, which included nearly hitting the road's curb six or seven times. In this regard, we reject Rudolf's attempt to differentiate the circumstances in his case from those in *State v. Post*, 2007 WI 60, 301 Wis. 2d 1, 733 N.W.2d 634. In *Post*, our supreme court declined to adopt a bright-line rule that weaving within a single lane by itself would give reasonable suspicion to

4

justify a traffic stop. *Id.*, ¶¶1-2. Instead, the court looked to the totality of the circumstances surrounding the contested traffic stop to determine whether the officer had reasonable suspicion to perform the stop. *Id.*, ¶2.

¶9 Our supreme court first stated, "[I]t is clear that driving need not be illegal in order to give rise to reasonable suspicion." *Id.*, ¶24. The court then noted that while weaving within a single lane alone is insufficient to give rise to reasonable suspicion, the defendant was driving in an "S-type" manner "covering both the traveling lane and the parking lane" "'several' or a 'few' times" for two blocks. *Id.*, ¶¶26, 31-36. The court also noted that the driving took place at 9:30 p.m. and that "[w]hile this is not as significant as when poor driving takes place at or around 'bar time,' it does lend some further credence to [the officer's] suspicion that Post was driving while intoxicated." *Id.*, ¶36. The court concluded that any one of these facts, alone, might be insufficient but that the totality of the circumstances gave rise to the reasonable suspicion necessary for an investigatory stop. *Id.*, ¶38.

¶10 Rudolf argues that his driving took place at 10:40 p.m. instead of 9:30 p.m. and, citing two unpublished cases, argues that other courts have placed little weight on driving late at night as a factor weighing in favor of reasonable

suspicion.[3]  Rudolf also argues that while Kislewski found it "odd" that Rudolf pulled into the parking lot of a closed car dealership, Kislewski's observation was "utterly meaningless because it [was] not an objective and specific 'fact.'"

¶11    We conclude that Rudolf's conduct preceding his detention gave Kislewski reasonable suspicion to perform a stop to investigate Rudolf for operating a motor vehicle while intoxicated.  We again note that, similar to the defendant's repeated "S-type" swerving in *Post*, Rudolf repeatedly swerved not only within his lane of traffic, but also over the fog line and, importantly, almost struck the curb six or seven times.  *See id.*, ¶¶30-31.  Regardless of whether crossing the fog line is in and of itself not a violation of the Wisconsin Traffic Code, repeated swerving—and to the degree of almost hitting the road's curb—is a strong indication that the driver is operating while impaired.  Further, we note that Rudolf's erratic driving took place at approximately 10:40 p.m.  While driving at night is not as significant of a factor as Rudolf's repeated swerving, "it does

---

[3] While unpublished authored opinions issued after July 1, 2009, may be cited for persuasive value, this court "need not distinguish or otherwise discuss an unpublished opinion." *See* WIS. STAT. RULE 809.23(3)(b).  We note, however, that the facts in the two unpublished cases that Rudolf cites are materially different from those in this case.  For example, the defendant in *County of Sauk v. Leon*, No. 2010AP1593, unpublished slip op. (WI App Nov. 24, 2010), was detained without the law enforcement officer having witnessed the defendant driving a vehicle; the defendant and another individual were first spotted outside a vehicle parked in a lane of traffic on a frontage road.  *Id.*, ¶¶2-3.  Indeed, the court noted:  "We begin the analysis by noting that this case is somewhat unusual in that the deputy lacked proof of reckless or inattentive driving by Leon.  The deputy was not aware of any driving behavior by Leon indicative of impaired driving, or even of imprudent driving."  *Id.*, ¶18.

Still, Rudolf is correct that our supreme court in *Post*—and subsequent courts—have found the time of night to be "not as significant" of a factor in there being reasonable suspicion of driving while intoxicated.  *See State v. Post*, 2007 WI 60, ¶36, 301 Wis. 2d 1, 733 N.W.2d 634.  Nevertheless, Rudolf fails to acknowledge that, consistent with *Post*, this is *a* factor that weighs against him.

lend some further credence to" Kislewski's suspicion that Rudolf was driving while intoxicated. *See id.*, ¶36.

¶12      Rudolf discounts the foregoing, arguing that "there is no evidence of any *wrongdoing* in this case." It is unclear what Rudolf means by this, insomuch as testimony *is* evidence, and Kislewski's testimony regarding Rudolf's repeated, wide swerving is evidence of operating while intoxicated, which is decidedly wrongdoing. Presumably, Rudolf is referring to the fact that his swerving over the fog line was not recorded by Kislewski's squad car camera. Rudolf also notes that Kislewski's first alleged observation of Rudolf swerving over the fog line was made when Kislewski looked into his rearview mirror before he turned around in his squad car to follow Rudolf's vehicle. We interpret these arguments as an attack on Kislewski's credibility and reject them accordingly.

¶13      The circuit court is the "sole arbiter" of a witness's credibility, *State v. Sloan*, 2007 WI App 146, ¶21, 303 Wis. 2d 438, 736 N.W.2d 189, because it has the "superior opportunity … to observe the demeanor of witnesses and to gauge the persuasiveness of their testimony," *Kleinstick v. Daleiden*, 71 Wis. 2d 432, 442, 238 N.W.2d 714 (1976). Notably, Rudolf made similar attacks on Kislewski's credibility at the motion hearing, and the circuit court rejected the attacks, stating:

> The [c]ourt disagrees…. Kislewski's acknowledgments of Mr. Rudolf's appropriate driving after the camera was on enhance his credibility rather than diminish it from the [c]ourt's perspective. Moreover the [c]ourt's observation of [Kislewski's] demeanor, tone and facial expressions … were consistent with a witness testifying truthfully …. Kislewski's testimony … is found to be credible by this [c]ourt for the purposes of this decision and [o]rder.

¶14 We reject Rudolf's attempt to again attack Kislewski's credibility. As noted earlier, Rudolf admits that the underlying facts are undisputed, *see supra* ¶6; he does not argue that any of the court's factual findings based on Kislewski's testimony are clearly erroneous. Despite this context, Rudolf repeatedly grafts onto his totality-of-the-circumstances analysis arguments that are premised on questioning the validity of Kislewski's testified-to observations. We do not countenance this approach.

¶15 Rudolf's other main argument is that regardless of whatever observations Kislewski initially made, any reasonable suspicion of intoxicated driving based on those observations dissipated due to Kislewski's subsequent observations of Rudolf operating his vehicle for approximately three-quarters of one mile without incident or another moving violation. Rudolf submits that someone who is intoxicated would be unable to drive in such a successful and lawful manner, essentially arguing that the totality of these circumstances eliminated any reasonable suspicion that he was operating while intoxicated.

¶16 Rudolf is correct that we must consider the totality of the circumstances, including his "flawless" driving for some period of time. But this short amount of lawful driving did not dispel the reasonable suspicion that arose out of Rudolf's severe, repeated swerving, especially when later combined with his stopping in the middle of the parking lot of a closed business. Any reasonable suspicion that dissipated by Rudolf's driving without incident or without making additional moving violations for some blocks after swerving repeatedly was largely restored when Rudolf pulled into the parking lot of a closed business and parked.

¶17 As to that last circumstance, Kislewski found Rudolf's actions "odd," and he further testified that his suspicion was based on the articulable facts that Rudolf pulled into the parking lot before Kislewski had initiated a traffic stop, that the dealership was closed, and that it was late at night. Rudolf contends that such an opinion is not an objective indicium of odd behavior. We disagree. It *is* objectively odd to park in the middle of the parking lot of a closed business, particularly when it is late at night.

¶18 While Rudolf proffers a number of innocent, if not responsible, explanations for why someone might enter such a parking lot as he did (although he did not offer one when asked by Kislewski), "if any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, [a police officer has] the right to temporarily detain the individual for the purpose of inquiry." *See State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990). In other words, Kislewski was permitted to infer wrongful conduct—including that Rudolf was attempting to evade him—when Rudolf pulled into the middle of the parking lot of a closed business and stopped.

¶19 Accordingly, we conclude that while "[a]ny one of these facts, standing alone, might well be insufficient," under the totality of the circumstances, Kislewski "presented specific and articulable facts, which taken together with rational inferences from those facts, [gave] rise to the reasonable suspicion necessary for an investigative stop." *See State v. Waldner*, 206 Wis. 2d 51, 58, 556 N.W.2d 681 (1996); *see also Post*, 301 Wis. 2d 1, ¶37.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.