COURT OF APPEALS
DECISION
DATED AND FILED

November 7, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10
and RULE 809.62.

Appeal No.   **2022AP2007**

Cir. Ct. No.  **2021ME7**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE MENTAL COMMITMENT OF P. D. F.:

SAWYER COUNTY,

PETITIONER-RESPONDENT,

V.

P. D. F.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Sawyer County:
JOHN M. YACKEL, Judge. *Affirmed*.

¶1      STARK, P.J.[1]  Paul[2] appeals an order for extension of his
involuntary commitment and his continued involuntary medication and treatment

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22).
All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

pursuant to WIS. STAT. §§ 51.20 and 51.61(1)(g).[3] Paul argues, and we agree, that the circuit court clearly erred in finding that he does not understand the advantages, disadvantages, and alternatives to his proposed medication and treatment. Paul further argues that Sawyer County failed to prove by clear and convincing evidence that he is unable to apply his understanding of the advantages, disadvantages, and alternatives of his proposed medication and treatment to his own condition to make an informed choice about refusing medication and treatment. We disagree on this latter point, and, accordingly, we affirm the circuit court's orders.

## BACKGROUND

¶2 Paul was charged with first-degree intentional homicide, attempted first-degree intentional homicide, and aggravated battery stemming from allegations that, in May 2020, he stabbed his father to death and he stabbed his mother. Paul explained that he stabbed his father because he believed his father was involved in a pedophile sex ring and that he stabbed his mother while fending off her attacks. Paul believed that President Donald Trump and Vice President Michael Pence ordered him to kill his father.

---

[2] For ease of reading and to protect confidentiality, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

[3] Paul's notice of appeal states that he is appealing "the Order for Extension of Commitment." The cover pages of Paul's appellate briefs state that he appeals "Orders for Involuntary Commitment and Involuntary Medication and Treatment." Paul does not, however, raise any issue on appeal regarding the order extending his commitment. His appellate arguments pertain only to the involuntary medication and treatment order. We therefore limit our discussion to that order, without separately addressing the commitment order.

¶3      Approximately one year later, Paul was emergently detained, and he was diagnosed with an unspecified schizophrenia spectrum and other psychotic disorder. Shortly after the emergency detention, a commitment hearing was held, and the circuit court entered an order for Paul's commitment and an order for the involuntary administration of medication and treatment pursuant to WIS. STAT. §§ 51.20 and 51.61(1)(g). Paul's six-month commitment and medication orders were later extended for an additional six months.

¶4      In May 2022, the County again petitioned for Paul's recommitment. Along with the petition, the circuit court provided Paul with notice of his right to refuse medication and right to "refuse to converse with examining physicians, psychologists, or other personnel." The court appointed a psychiatrist, Dr. Leslie Taylor, and a psychologist, Dr. James Freiburger, to examine Paul. Both doctors submitted reports to the court and testified at the recommitment hearing. However, neither of the doctors' reports was offered into evidence at the hearing.

¶5      As relevant here, Dr. Taylor was the only expert to testify at the hearing regarding Paul's competency to make treatment decisions. Taylor testified that Paul was diagnosed with "unspecified schizophrenia spectrum or other psychotic disorder." She opined that Paul continued to be a danger to himself or others because of the severity of his crimes, his continued delusional thinking, and his inability to process or talk about the crimes. Taylor opined that the least restrictive placement consistent with Paul's needs was a locked inpatient unit and that Paul needed involuntary medication or treatment.

¶6      Doctor Taylor further testified that Paul had exhibited good behavior throughout his time at the mental health institution and that he was voluntarily taking his psychotropic medication as ordered by the circuit court. She also

testified, however, that Paul would not continue to take the medication if he were not under a court order requiring him to do so. She stated that Paul "acknowledged he was diagnosed with a mental illness" but he became "cagey about whether or not he actually thought he had a mental illness." She concluded that Paul "does not believe that he has a problem" and "doesn't believe medications are helpful."

¶7 In addition, Dr. Taylor explained that Paul was capable of understanding, and appeared to understand, her explanation of his medication and its benefits and side effects. However, Taylor opined that Paul was incapable of applying this understanding to his own condition because Paul did not believe that he had a mental illness and did not believe the medication was helpful because he "feels kind of like he is the same on or off the medication." Taylor stated that if Paul stopped taking his medication, she believed Paul would revert back to the condition that he was in when he killed his father and stabbed his mother.

¶8 Doctor Taylor identified "therapy" as an alternative treatment to Paul's medication, and she stated that Paul participated in individual psychotherapy and group therapy. She further testified that Paul had a willingness to continue therapy if "release[d]."[4] Taylor also testified that Paul stated he might talk to a counselor depending on where he moved. However, the circuit court also heard testimony from Dr. Freiburger, who stated that staff at the facility where Paul was committed was having difficulty treating Paul with group therapy and individual psychotherapy due to his "history of nondisclosure."

---

[4] We presume Dr. Taylor's statement that Paul would continue therapy upon release was in reference to Paul being released from the commitment order and medication order.

¶9      Based upon Dr. Taylor's testimony, the circuit court found Paul dangerous under WIS. STAT. § 51.20(1)(a)2.b., and it entered orders for Paul's twelve-month recommitment and allowing for his involuntary medication and treatment.   As to Paul's continued medication and treatment, the court found that: (1) Paul did not feel that his medications were making a difference; (2) Paul needed his medications and would be a danger to himself if the medications were withdrawn; (3) Paul had a substantial probability of physical harm to other individuals; and (4) there was a need for involuntary medication and treatment because, due to his mental illness, Paul was "incapable of expressing or understanding the advantages or disadvantages of accepting the medication or treatment, and the alternatives."   The court did not explicitly make any findings regarding whether Paul was capable of applying an understanding of the medication and treatment to his own condition.

¶10     Contrary to the circuit court's oral ruling, the written involuntary medication and treatment order does not state that the court found Paul not competent to refuse medication and treatment due to him being "incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives."   Instead, the order states that Paul is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … condition in order to make an informed choice as to whether to accept or refuse psychotropic medications."   Paul now appeals the order for extension of his involuntary commitment and involuntary medication and treatment order.

**DISCUSSION**

¶11     As noted above, while Paul appeals the order for the extension of his involuntary commitment, on appeal he argues only that the court erred in continuing his involuntary treatment and medication order.  Paul asserts that the County failed to meet its burden to prove, by clear and convincing evidence, that he was not competent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g).  We conclude that the circuit court clearly erred when it found that Paul was incapable of understanding the advantages, disadvantages, and alternatives to his medication and treatment.  However, we also conclude that the evidence was sufficient for the court to find that Paul was incapable of applying his understanding of his medication and treatment to his own condition in order to make an informed choice as to whether to accept or refuse psychotropic medication and treatment.

¶12     Whether a person is competent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g) presents a mixed question of fact and law.  ***K.N.K. v. Buhler***, 139 Wis. 2d 190, 198, 407 N.W.2d 281 (Ct. App. 1987).  We uphold the circuit court's findings of fact unless they are clearly erroneous.  ***Id.***  Whether those facts meet the statutory requirements is a question of law that we review de novo.  ***Id.***  "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'"  ***Phelps v. Physicians Ins. Co. of Wis.***, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted).

¶13     Under WIS. STAT. § 51.61, "a person has the right to refuse medication or treatment unless a [circuit] court determines, based upon clear and convincing evidence, that the person is incompetent to make such a decision."

*Outagamie County v. Melanie L.*, 2013 WI 67, ¶¶37, 53, 349 Wis. 2d 148, 833 N.W.2d 607.

> [A]n individual is not competent to refuse medication or treatment if, because of mental illness …, and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual, one of the following is true:
>
> a. The individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.
>
> b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, … in order to make an informed choice as to whether to accept or refuse medication or treatment.

Sec. 51.61(1)(g)4.

¶14    Paul first argues that the circuit court's oral finding that he does not understand the advantages, disadvantages, and alternatives to his medication and treatment is clearly erroneous.  He points to Dr. Taylor's testimony that he appeared to understand her explanation of the advantages, disadvantages, and alternatives to the medication and treatment.  Paul notes that the County provided no evidence to refute this testimony, and the County does not disagree on appeal.

¶15    We agree with Paul that the record does not support the circuit court's oral finding that Paul was "incapable of expressing or understanding the advantages or disadvantages of accepting the medication or treatment, and the alternatives."  Doctor Taylor was the only witness to testify regarding this issue.  She stated that Paul understood her explanation regarding the advantages, disadvantages, and alternatives to taking the medication and treatment.  Taylor further testified that she did not believe Paul was incapable of expressing an

understanding of the advantages, disadvantages, and alternatives to the medications and treatment. The County therefore failed to prove that Paul was not competent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g)4.a., and the court's finding to the contrary was clearly erroneous.

¶16 Paul next notes that the circuit court's written involuntary medication order states that Paul is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … condition in order to make an informed choice as to whether to accept or refuse psychotropic medications." He asserts that the court did not make this finding during its oral ruling or identify any facts to support it. Paul further asserts that the County failed to prove by clear and convincing evidence that he was incompetent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g)4.b. We conclude that the County met its burden of proof as to this factor.

¶17 Doctor Taylor testified that she believed Paul is not "capable of applying this understanding [of the advantages and disadvantages of his treatment and medication] to his own condition" because "he does not believe that he has a problem, that he has a mental illness." Taylor explained that, while Paul has acknowledged his diagnosis, it is her "impression" from her interview with Paul that he "firmly believes that he does not have a mental illness." Taylor also stated that Paul "doesn't believe medications are helpful." She further opined that Paul needs involuntary medication or treatment and that without medication or treatment, he would "revert back to the condition that he was in when the crime[s were] allegedly committed." Therefore, the record contains sufficient evidence to support the circuit court's written finding that Paul is substantially incapable of applying an understanding of the advantages, disadvantages and

alternatives to his condition to make an informed choice as to whether to accept or refuse psychotropic medications.

¶18    Paul argues to the contrary, pointing to evidence that he has acknowledged his diagnoses of mental illness, has voluntarily taken an antipsychotic medication while under orders to do so, has engaged in individual psychotherapy, and has engaged in group therapy.  Paul further notes that while Dr. Taylor stated that he would not continue to take medication if the treatment order was not continued, she acknowledged that he would continue therapy.

¶19    Paul's argument, however, ignores Dr. Taylor's further testimony that Paul was "cagey" about "going deeper" into discussions of mental illness and was unwilling to "process" the "severity of the crime[s]" or "talk about it in any meaningful therapeutic way."  Paul also ignores Dr. Freiburger's testimony that staff at the institution were having difficulty treating Paul with group therapy and individual psychotherapy due to Paul's "history of nondisclosure."  Taylor further testified that Paul stated that he *might* talk to a counselor, depending upon where he moved.  This testimony shows that Paul does not unequivocally agree that he suffers from a mental illness, nor did he definitively agree to pursue therapy as a form of treatment if the circuit court order was not continued.

¶20    Paul responds that his mental commitment is based upon unresolved homicide charges.  He therefore contends that his knowledge of the legal system, his claim of innocence to the pending charges, his right to remain silent, and the warning that his statements could be used against him, show that his "cagey" response to Dr. Taylor's questions demonstrate his insight and his ability to make informed choices regarding his legal jeopardy.

¶21 It may well be the case that Paul has insight into his legal jeopardy. However, that does not negate the doctors' testimonies that Paul does not believe that he is mentally ill, that he would not continue his medication and treatment if the circuit court's order were withdrawn, and that Paul is, therefore, substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his condition in order to make an informed choice as to whether to accept or refuse psychotropic medications and treatment.

¶22 The circuit court is the sole arbiter of the credibility of witnesses. *State v. Sloan*, 2007 WI App 146, ¶21, 303 Wis. 2d 438, 736 N.W.2d 189. Here, the court clearly found the doctors' testimonies credible, as it relied upon them in making its findings. The record supports the court's finding that Paul did not believe that his medication was making a difference, despite the fact that, based on Dr. Taylor's testimony, "medications would have a therapeutic value for [Paul]," and it was her belief that Paul would "revert back to the condition that he was in when the crimes[s were] allegedly committed" if the medication were withdrawn. The record also supports the court's written finding that Paul is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … condition in order to make an informed choice as to whether to accept or refuse psychotropic medications." The County, therefore, met its burden of proving by clear and convincing evidence that Paul was not competent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g)4.b.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

10