SCHILL, Plaintiff in error, v. STATE, Defendant in error.

*No. State 106. Argued February 4, 1971.—Decided March 30, 1971.*
(Also reported in 184 N. W. 2d 858.)

474

For the plaintiff in error there was a brief and oral argument by *Herbert S. Bratt* of Milwaukee.

For the defendant in error the cause was argued by *Michael Skwierawski,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HEFFERNAN, J. The defendant initially asserts that the traffic arrest was invalid because the officer did not have the traffic warrant and capias in his posses-

sion at the time he came to defendant's apartment and hence all subsequent police conduct that stemmed therefrom was invalid.

Secs. 954.02 (6) (a) and 954.03 (2), Stats. 1967, provide that physical possession of the warrant is not necessary at the time of the arrest. Under sec. 954.02 (6) (a), the defendant's rights are satisfied in that he can, upon arrest, ask to see the warrant and such warrant must be shown to him as soon as possible. No such request was made at the time of the initial arrest and, in fact, the capias and warrant were shown to him within a short time after he was booked at the police station. No defect in the proceedings arises from the fact that Officer Monreal did not have the outstanding warrant in his possession at the time of the arrest.

We are also satisfied that the police officer's unobstructed view of the heroin packets through the open door did not constitute a search. In the recent case of *Milburn v. State,* ante, p. 53, 183 N. W. 2d 70, we pointed out that a police officer's view of coins and other articles inside a motor vehicle did not constitute a search in the constitutional sense. We quoted therein with approval *Edwards v. State* (1968), 38 Wis. 2d 332, 338, 339, 156 N. W. 2d 397:

" 'A search can be conducted by one's eyes alone. However, "A search implies a prying into hidden places for that which is concealed." It is not a search to observe what is in plain view.' "

In *Harris v. United States* (1968), 390 U. S. 234, 236, 88 Sup. Ct. 992, 19 L. Ed. 2d 1067, the United States Supreme Court pointed out that objects that are in the plain view of an officer who has a right to be in the position from which the view is taken are subject to seizure and may be introduced into evidence.

We followed a similar rationale in *State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349.

We are thus satisfied, assuming for the moment that Officer Monreal had the right to be in the position to have the view, that no search took place and the articles were subject to seizure.

The crucial and difficult question remains of whether Officer Monreal's positioning himself so that the view could be had was the result of unreasonable police conduct that transgresses the principles of the fourth amendment. If so, the arrest for the possession of narcotics and their seizure was invalid.

The defendant contends that the circumstances of this case were similar to the situations warned against in *Ker v. California* (1963), 374 U. S. 23, 83 Sup. Ct. 1623, 10 L. Ed. 2d 726. *Ker,* however, was primarily concerned with the question of whether the entry by the police into the premises of the defendant was unlawful. The supreme court found the entry therein constitutionally antiseptic because, almost immediately before, Ker had been observed having contact with narcotics suspects and, in light of the short period of time between his exposure to narcotics suspects and the time of the entry, this was substantially equivalent to a hot pursuit. Ker had furtively eluded the police only a short time before, and it was reasonable for the police officers to conclude that any announcement before entering would result in the destruction of the narcotics. Although the language of *Ker* is significant in demonstrating the penumbra of protection of a citizen's privacy that is afforded by the fourth amendment, the facts are so different that they are not persuasive in the instant case.

In the instant case, it should be noted at the outset that the search, if one there was, was not made after the entry of the room but was a visual search which immediately and without the necessity of further investigation or entry gave rise to the probable cause that the defendant possessed heroin.

In this case, Officer Monreal was lawfully there for the purpose of executing a warrant. When asked who was there, he gave his own first name and he was in fact known to the defendant. It appears, however, that Officer Monreal made no attempt to correct what appeared to be defendant's assumption that the person outside of the door was one "Serencoben." On the other hand, the police officer did not attempt to make an entry and only entered after the door was opened and after he saw the narcotics in plain view. There is no contention that the defendant made any objection to this entry into the premises.

We pointed out in *Morales v. State* (1969), 44 Wis. 2d 96, 170 N. W. 2d 684, that, before breaking into a private place, a police officer must identify himself and his purpose and, except under special circumstances, must allow time for the door to be opened. In the instant case, there was no entry except one consented to, and there was no forcible breaking. There is absolutely nothing in the record to show that the arrest on the traffic charge was anything but proper police conduct. There is nothing to indicate that Officer Monreal engaged in any trickery or subterfuge for the purpose of securing narcotics evidence. The record, in fact, was to the contrary. He was doing precisely what the obligation of his employment required. Nor can we conclude that, when, as here, an officer in the good faith performance of his duty executes an arrest on one charge, he is required to ignore evidence of other crimes that he may come upon inadvertently in the course of his lawful duty. His obligations as a police officer are to the contrary, and it would appear that Officer Monreal acted reasonably under the circumstances. His position was not unlike that of the officers in *Browne v. State* (1964), 24 Wis. 2d 491, 129 N. W. 2d 175, 131 N. W. 2d 169, where it was held that the view of the defendant through an open doorway from a point where

the officers had a right to be and seeing in defendant's immediate vicinity a hypodermic needle and syringe did not constitute an improper invasion of the defendant's privacy. Similarly, in *Edwards v. State* (1968), 38 Wis. 2d 332, 156 N. W. 2d 397, and in *Jackson v. State* (1965), 29 Wis. 2d 225, 138 N. W. 2d 260, we concluded that a view through a window from a location where the police had a right to be was not an unreasonable search as proscribed by either the fourth amendment of the United States Constitution or by art. I, sec. 11, of the Wisconsin Constitution.

In the instant case, once having concluded, as we have, that the officer could, pursuant to the warrant, properly station himself at defendant's doorway even though the warrant was not in his physical possession, we reach the inevitable conclusion it was reasonable for him to make the visual search when the door was opened and that such viewing is not prohibited by the constitution.

Inasmuch as the majority of the court concludes that the police conduct in this case was not unreasonable, we do not reach the question which concurring members of this court believe ought to be decided herein. The question of whether a police officer armed with an arrest warrant, in all or any circumstances, may resort to a ruse or misrepresentation of identity and purpose to facilitate the arrest is reserved for future consideration.

After defendant Schill was arrested on the narcotics charge without a warrant he was taken to the jail and booked, and the following day Officer Monreal swore out a complaint before an assistant district attorney. There is no evidence that a warrant on the narcotics charge was ever issued by an impartial magistrate.

The defendant relies upon *State ex rel. White v. Simpson* (1965), 28 Wis. 2d 590, 137 N. W. 2d 391. We conclude, however, that defendant's reliance upon *State ex rel. White v. Simpson* is misplaced in the

instant case. That case and the constitutional provisions relied on in the prior federal cases upon which it is based go to the question of probable cause for *arrest,* and they determine that a warrant for arrest may be issued only by a neutral and detached magistrate. The purpose of this rule is obviously to protect the citizen from unlawful intrusions into his privacy. In the instant case, however, the intrusion into the privacy of Schill was the consequence of a valid and uncontested warrant issued by the court for a traffic violation. When making the arrest pursuant to that warrant, probable cause appeared to the police officer to make an arrest on the additional charge, that of the possession of narcotics. We therefore conclude that the *State ex rel. White v. Simpson* rule is satisfied for a duality of reasons: The traffic arrest warrant itself and the probable cause for the narcotics arrest that became apparent when the officer could reasonably conclude that an additional crime was committed in his presence. No warrant for the second arrest was required under these circumstances. Moreover, sec. 954.02 (4m), Stats. 1967, provides:

"If the defendant has previously been validly arrested without warrant and is still in custody, no summons or warrant is required and the defendant may be brought before a judge of the county court with a complaint subscribed and sworn to before either the district attorney or a magistrate."

This statute recognizes the superfluity of issuing a warrant when the arrest has already been executed. It is true, of course, that *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 173 N. W. 2d 175, holds that a *complaint* must state facts constituting probable cause to hold the defendant. We also stated therein that it is a jurisdictional requirement for holding a preliminary examination. In the instant case this jurisdictional re-

quirement was satisfied, and there is no basis for alleging and, in fact, defendant at no time alleged that the face of the complaint failed to state facts constituting probable cause. Moreover, probable cause was found in the preliminary hearing by a detached and impartial magistrate. The law does not require that a warrant be issued after a defendant is otherwise lawfully in custody. The complaint may constitutionally be sworn to before a district attorney or his assistants and such complaint, assuming that it is factually sufficient, confers jurisdiction for a preliminary examination. We conclude that the conviction and the subsequent post-conviction order that upheld it are free of constitutional taint.

*By the Court.*—Judgment and order affirmed.

ROBERT W. HANSEN, J. (*concurring*). Here the court majority seems to seek not to reach and resolve the question of whether a police officer, engaged in serving a valid arrest warrant, may resort to ruse or role-playing to secure the opening of a closed door and the placing of the person named in the warrant under arrest. If so, its reach exceeds its grasp.

Clearly, the majority has upheld an arrest procedure where the warrant-serving officer did identify himself or his mission when asked who was at the door.

As clearly, as the writer sees it, the majority has held valid an arrest, entry and seizure where the mumbled response, "Nicky," and "Yeh, man, open the door," led the defendant to expect someone other than a police officer to be at the door. He would hardly have left the eyedroppers and heroin packets in plain view from the door if he had even suspected that a law officer might be outside the closed door.

Also clear, as this writer reads the cases, if, instead of posing as a "Nicky Serencoben," a friend or customer

of the defendant, the warrant-serving officer had assumed the role of repairman or salesman, there would be no constitutional, statutory or other cloud by reason of the element of dissembling or deception involved.

A very nearly unanimous holding of courts reaching the question have held that a warrant-serving officer may assume an identity other than that of policeman about to serve a warrant. Most of the cases have arisen in jurisdictions, as under the Federal Code,[1] or states like California,[2] where the statutes require an officer, executing a warrant, to first give notice of his authority and purpose and then, only if he is refused admittance, may he "break open" any door or window. Wisconsin has no such statute. Even where there is such statute, the courts uniformly hold that an entry and arrest secured by ruse, in the absence of force, do not constitute a "breaking" and are constitutionally antiseptic.

Where a revenue agent, who had obtained a valid warrant for defendant's arrest, gained admittance to defendant's premises for the purpose of serving the warrant, the entry was held to be lawful, the arrest valid and search incident to such arrest permissible.[3]

Where narcotic agents had reliable information that the defendant was ready to sell narcotics to a man named Lacey, and placed themselves outside defendant's hotel room, and when asked, "Who's there?" had an agent, disguising his voice, answer, "It's Lacey; open up," the arrest, entry and resultant conviction were upheld even though the officers had no warrant.[4]

---

[1] Sec. 3109, Title 18, U. S. C.

[2] California Penal Code, sec. 844.

[3] *Leahy v. United States* (9th Cir. 1959), 272 Fed. 2d 487, 489, 490, the court holding, ". . . Misrepresentation of identity in order to gain admittance is not a breaking within the meaning of the statute, . . ." and "There is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant. . . ."

[4] *Dickey v. United States* (9th Cir. 1964), 332 Fed. 2d 773, 778, the court finding no forcible entry under the federal statute and

Where the arresting officers had a valid arrest warrant and, posing as telephone repairmen, were admitted to defendant's premises without force, the entry, arrest and search of defendant's person incident to such arrest were held valid, and evidence seized was held admissible.[5]

Where the arresting officer had a valid warrant for arrest to serve, and knocked on the door of defendant's home and shouted, "Gas man" for the purpose of gaining admittance, the entry and arrest were found proper, the court finding no statutory bar or constitutional infirmity in the admitted use of a ruse to secure admittance.[6]

Where police officers, who had reasonable cause to believe that the person to be arrested had committed an offense within the officers' presence, though without warrant for his arrest, had the manager of a motel announce that there was a telephone call for a female companion of defendant in the motel room, and, when the companion opened the door, entered and arrested the defendant, the entry, arrest and incidental search were held ". . . not violative of California law or the United States Constitution."[7] In this case, the federal

". . . hence no necessity for the officers to notify Dickey [the defendant] of their authority and purpose before entering the apartment, . . ." despite what the court termed ". . . the employment of a ruse to obtain the full opening of the Dickeys' door . . . ."

[5] *Smith v. United States* (5th Cir. 1966), 357 Fed. 2d 486, citing with approval *Leahy v. United States, supra.*

[6] *United States v. Syler* (7th Cir. 1970), 430 Fed. 2d 68, citing *Leahy v. United States, supra,* and other cases above summarized.

[7] *Ponce v. Craven* (9th Cir. 1969), 409 Fed. 2d 621, 626, the court holding, ". . . The employment of a ruse which results in the occupant of a dwelling voluntarily opening the door and thereby allowing officers to enter without announcement of purpose, is not a breaking . . . .

"The manner in which the police entered Ponce's motel room and his subsequent arrest are not violative of California law or the United States Constitution."

appeals court noted that ". . . The California Court of Appeal held that the police entry in this case was not unlawful merely because a ruse was employed. People v. Ponce, Crim. No. 10651 . . . People v. Quilon, 245 Cal. App. 2d 624, 628, 54 Cal. Rptr. 294, 298 (1966) states the rule:

" '[C]onstitutionally proscribed trickery is that in which an officer obtains entry by subterfuge to a place where he has no right to be. Stratagem in itself is not illegal; it may be used, for example, to gain entry in order to effect a lawful arrest.' " [8]

In the case before us, we do not deal with a "breaking" or entry by force.[9] We deal with the use of ruse, whether termed role-playing or deception, in order to accomplish the service of an arrest warrant. The cases cited make clear that "There is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant." [10] If, short of constitutional or statutory mandate, courts have right or reason to seek to set the public policy as to acceptable police procedure in this area, the case for permitting use of ruse in executing arrest warrants is convincing.

The public policy or purpose to be served in the execution of arrest warrants is that of serving the person named in the warrant in as safe, error-free and danger-avoiding manner as can be effected. For the warrant-

[8] *Id.* at page 626. On the importance of the officer's right to be where he is at time of arrest or seizure, *see Harris v. United States* (1968), 390 U. S. 234, 236, 88 Sup. Ct. 992, 993, 19 L. Ed. 2d 1067, stating, ". . . It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. . . ."

[9] *Morales v. State* (1969), 44 Wis. 2d 96, 106, 170 N. W. 2d 684, deals with forceful entry. To quote the opinion, "The defendant also questions the force which was employed by the officer in breaking down the door to his apartment. . . ."

[10] *Leahy v. United States, supra,* footnote 3.

serving officer to pose as someone other than an arresting officer may best serve the goal of avoiding error, lessening opportunities for escape and minimizing the likelihood of violent resistance. Many individuals are not enthusiastic about having legal papers served upon them. Process servers soon learn that some measure of role-playing is required if summons or subpoena are to be served with dispatch and accuracy. The game of process-dodging becomes a more dangerous sport when service includes placing the person served under arrest. Press-recorded incidents where police officers have been shot and killed while making routine arrests reveal the risks involved in placing persons under arrest. It is in the public interest that warrants be served in as safe and sure a manner as possible. Regard for the safety risk involved must include concern for the life and limb of the law officer given the assignment of placing a person named in a warrant under arrest. To hold that such law officer may not disguise his identity and mission until the warrant can be served and arrest made is to expose such officer to an increased, and unnecessarily so, risk of bodily harm or assassination while carrying out an official duty. Any claim of right of the person about to be served to escape through a rear door, to deny identity, to avoid confrontation, or even not to be surprised at finding the someone at the door is a police officer instead of a friend, customer or repairman, is clearly inferior, if it can be said to exist at all. We see no reason for not saying so now, instead of, as predictably will be the case, saying so later on.

I am authorized to state that Mr. Justice LEO B. HANLEY joins in this concurring opinion.