STATE of Wisconsin, Plaintiff-Respondent,

v.

Samatra COLLINS, Defendant-Appellant.

Court of Appeals

No. 83–1846–CR. Submitted on briefs September 17, 1984.— Decided October 19, 1984.
(Also reported in 363 N.W.2d 229.)

For the defendant-appellant the cause was submitted on the briefs of *Louis B. Butler, Jr.,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general,

with *Jerome S. Schmidt,* assistant attorney general of counsel, of Madison.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

WEDEMEYER, P.J.   Samatra Collins appeals from a conviction of burglary, party to the crime, contrary to secs. 943:10(1)(a) and 939.05, Stats.  He contends that because he was arrested in his home by officers who gained entry through use of an invalid warrant, the trial court had no personal jurisdiction over him and the charges should therefore be dismissed.  He also contends that his confession to burglary should be suppressed because it was the fruit of the unlawful arrest and because it was taken in violation of his right to have counsel present at the interrogation.  We hold that the charges need not be dismissed, because the arresting officers entered Collins' home in objectively reasonable reliance on an arrest warrant which they only later discovered was invalid.  We further hold that Collins' statement must be suppressed because it was taken in the absence of counsel after Collins invoked his right to have counsel present.  We therefore reverse Collins' conviction and remand the case for proceedings consistent with this opinion.

On January 20, 1983, two men confessed to having committed several burglaries and one implicated Collins as an accomplice.  The investigating officer had a teletype sent that Collins was wanted for burglary, and an entry was made into the police department's NCIC (National Crime Information Center) computer system that a "temporary felony want"[1] was out for Collins.

---

[1] A "temporary felony want" or "temporary warrant" meant that the suspect was alleged to have committed a felony and should be apprehended promptly, and that there was information sufficient to support an arrest warrant, but that no arrest warrant had yet been issued.

On the morning of January 21, 1983, Officer Bayer learned that Collins was wanted for burglary. He called the police department's Detective Clerical Division and was told that the sheriff's department had a speeding warrant for Collins.[2] Bayer went to Collins' home, intending to arrest him on the traffic warrant and to question him about the burglaries.

When Bayer arrived at Collins' home, Collins' mother answered the door. Bayer told her he was there to arrest Collins on the traffic warrant, and Mrs. Collins let him in.[3] When Collins entered the room, Bayer said he was there to arrest him on the warrant. Collins said he had paid the warrant. Bayer used the Collinses' telephone to call the Detective Clerical Division to check the warrant. He found that there was no warrant, but was told that Collins was wanted on a "temporary warrant" for burglary and that there was probable cause to arrest him.[4] Bayer then placed Collins under arrest.

The record is somewhat unclear as to precisely what occurred next. Collins testified he told Bayer he wanted to talk to his attorney, David Sweet. Bayer also testified that Collins asked to call his attorney. Bayer later testified that it was Mrs. Collins who mentioned the attorney. Bayer telephoned Sweet's office but could not reach him. He left a message saying that he was taking

---

[2] A warrant was issued for Collins' arrest on September 30, 1981, when he failed to appear on a violation of sec. 346.04(2), Stats., failure to observe an official traffic sign (no right turn on red). Collins was arrested on the warrant, appeared in court on August 12, 1982, pleaded guilty to the charge, and was assessed a forfeiture of $38.

[3] The state concedes that this cannot be considered a consensual entry, since entry was allowed pursuant to a claim of lawful authority. *See Bumper v. North Carolina,* 391 U.S. 543, 548–49 (1968).

[4] A warrant for Collins' arrest was issued January 22, 1983. Collins does not argue that there was no probable cause to arrest him.

Collins into custody and gave a number where Sweet could contact his superior officer. Collins knew that Bayer was making the call and that Sweet was unavailable.

When Collins arrived at the police station, he telephoned his mother to see whether Sweet had called. Sweet had not, and Mrs. Collins promised to try his office again. Sweet telephoned the police station between 3:50 and 4:10 p.m. The officer he spoke to would not allow him to speak to Collins and refused to tell Collins he had called. The officer said if Sweet were to come down to the station he would not be allowed to see Collins unless Collins asked for him. Collins testified he would have wanted to talk to Sweet had he known Sweet had called.

After Bayer conveyed Collins to the police station, he turned him over to Officers Jones and Jordan for interrogation. He did not tell them he had talked to Collins about the burglaries or that he had called Collins' attorney. Jones and Jordan began questioning Collins shortly after 4:00 p.m. The officers' testimony and Collins' testimony conflict as to whether, after receiving *Miranda* warnings, Collins asked again to talk to his attorney. The trial court found that he did not. Collins eventually confessed to several burglaries.

Collins moved to dismiss the charges and to suppress his statements. He argued that his arrest violated the fourth amendment to the United States Constitution and art. I, sec. 11 of the Wisconsin Constitution. He also argued that the statements were the fruit of the illegal arrest and that they were taken in violation of his rights under the fifth amendment to the United States Constitution. The trial court denied the motions. Regarding the arrest, it held that Bayer used no subterfuge to gain entry to Collins' home and that his actions were reasonable. Regarding the statements, it held that Collins had knowingly and voluntarily waived his right to counsel and that the statements were voluntary.

## ARREST

It is undisputed that there was no outstanding warrant for Collins' arrest at the time Bayer entered Collins' home to arrest him. The state does not argue that exigent circumstances or consent justified the entry. The United States Supreme Court held in *Payton v. New York,* 445 U.S. 573, 576 (1980), that the fourth amendment to the United States Constitution "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." Similarly, in *Laasch v. State,* 84 Wis. 2d 587, 595-96, 267 N.W.2d 278, 283-84 (1978), the Wisconsin Supreme Court held that "absent exigent circumstances, the entry of one's dwelling without consent to effect a warrantless felony arrest on probable cause, is unlawful" under art. I, sec. 11 of the Wisconsin Constitution and the fourth amendment. Collins' arrest therefore was unlawful under both the federal and the Wisconsin constitutions.

In *United States v. Leon,* 468 U.S. ——, 82 L. Ed. 2d 677 (1984), evidence was seized by officers acting in reasonable reliance on a search warrant which was ultimately found to be unsupported by probable cause. The Supreme Court held that the exclusionary rule should not be applied in that situation. 82 L. Ed. 2d at 692. The Court reasoned that the purpose of the exclusionary rule was to deter police misconduct and encourage adherence by the law-enforcement profession to fourth amendment standards, and that the rule could not be expected to deter objectively reasonable law-enforcement activity. *Id.* at 696. The Court concluded that the "substantial costs" of applying the rule—inhibition of the truth-finding functions of the judge and jury, allowing guilty defendants to escape punishment, and generating disrespect for the law, *id.* at 688-89—were not justified

by the marginal or nonexistent benefits that applying the rule would secure. *Id.* at 698.

We think the same rationale is applicable to confessions made as a result of an arrest where the officers acted in objectively reasonable reliance on an arrest warrant which is later determined to be invalid. The social costs, in terms of inhibition of the fact finder and windfalls to guilty defendants, are high, and the "benefits"—deterrence of officers' reasonable reliance on apparently valid warrants—are minimal.

The present case differs from *Leon* in that the warrant here was invalid because it had already been executed, not because it was unsupported by probable cause. This distinction is insignificant, however, because any reasonable officer in Bayer's position would have believed a warrant existed which authorized entry. The Wisconsin Supreme Court has held that an officer need not have an arrest warrant in his or her possession in order to make a valid arrest. The officer may rely on information received through police department channels that a warrant exists. *Schill v. State,* 50 Wis. 2d 473, 477, 184 N.W.2d 858, 860, *cert. denied,* 404 U.S. 965 (1971) ; sec. 968.07(1)(b), Stats. Suppressing evidence obtained in a situation where a reasonable officer would believe an arrest warrant existed would not help to deter misconduct by arresting officers, because there is no misconduct to deter.

Any deterrent effect produced would operate only on those persons responsible for keeping police department files up to date. The link between a negligent failure to remove an executed warrant from the files, and the eventual suppression of evidence of a different offense obtained through an erroneous rearrest on the old warrant, is an attenuated one, however. We think the link is too attenuated for suppression of the evidence to en-

courage timely purging of files. Application of the exclusionary rule here would not serve the purpose for which it was created. Collins' confession need not be suppressed even though he was arrested in his home without a valid warrant.

■

We turn now to the question of dismissal of the charges. The Wisconsin Supreme Court has stated that the trial court's personal jurisdiction over a criminal defendant "is dependent upon the defendant's physical presence before the court pursuant to a properly issued warrant, a lawful arrest or a voluntary appearance." *Walberg v. State*, 73 Wis. 2d 448, 457–58, 243 N.W.2d 190, 195 (1976) (footnote omitted). An unlawful arrest resulting from a defective arrest warrant deprives the court of personal jurisdiction over the defendant. *State v. Monje*, 109 Wis. 2d 138, 145, 325 N.W.2d 695, 699 (1982). The purpose of this rule is to " 'assure that arrest warrants will be issued only on probable cause as determined by a neutral magistrate.' " *Id.*, quoting *Walberg*, 73 Wis. 2d at 459, 243 N.W.2d at 196. The *Monje* court expressly rejected the theory that the rule was "a kind of exclusionary rule" designed to improve police practices. *Id.* at 146, 325 N.W.2d at 699–700.

■

Here, the defect in the warrant did not stem from its being issued by a person other than a properly empowered neutral magistrate. *Cf. Walberg* (warrant issued by court commissioner whose term had expired) ; *State ex rel. LaFollette v. Raskin*, 30 Wis. 2d 39, 139 N.W.2d 667 (1966) (warrant issued by deputy clerk of county court). The entry of Collins' home was made in reasonable, good-faith reliance on the existence of a valid warrant, and there was probable cause for Collins' arrest. Dismissal of the charges will not serve the purpose of either the *Walberg* rule or the exclusionary rule. The charges need not be dismissed.

## CONFESSION

In *Edwards v. Arizona,* 451 U.S. 477, 484–85 (1981), the Supreme Court considered an alleged waiver of the right to have counsel present during an interrogation. It held that once an accused has "expressed his desire to deal with the police only through counsel, [the accused] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." In *Solem v. Stumes,* —— U.S. ——, 79 L. Ed. 2d 579, 589 (1984), the Court characterized the *Edwards* rule as a "bright-line rule to safeguard pre-existing rights." The Court stated that under *Edwards,* a waiver occurring after the suspect invoked the right to counsel would be acceptable only if the suspect initiated the subsequent communication with the police. *Id.*

Here, Collins invoked his right to counsel while at his home, immediately upon being arrested.[5] After he was taken to the police station, Officers Jones and Jordan initiated an interrogation in the absence of counsel and obtained incriminating statements from him. This was a violation of the *Edwards* rule and, accordingly, the statements must be suppressed.

The state argues that Collins' request to talk to his attorney, made at his home, was ineffective to trigger the

[5] Officer Bayer's testimony, while self-contradicting, indicates that Mrs. Collins may have first mentioned calling Collins' attorney. The trial court made no finding as to who first raised the subject; Collins or Mrs. Collins. Resolution of the ambiguity is unnecessary, however, because the call to Sweet was made with Collins' knowledge and approval. We see no meaningful distinction between a defendant's own request that an attorney be called and the defendant's agreement with another's suggestion that an attorney be called.

*Edwards* rule. It argues that because no custodial interrogation had yet begun, Collins' *Miranda* rights had not yet attached, and that any request for counsel may therefore be ignored.

There is no indication in either *Miranda v. Arizona,* 384 U.S. 436 (1966), or *Edwards* that a request for counsel must be made *after* the warnings are given in order to be valid. On the contrary, the *Miranda* Court said: "If . . . [the suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. at 444–45. The Court also said that a pre-interrogation request for a lawyer "affirmatively secures [a suspect's] right to have one. . . ." *Id.* at 470. The Court emphasized that an effective *waiver* of the right to counsel can occur only after warnings are given. *Id.* It did not indicate, however, that the same rule applies to an effective *assertion* of the right to counsel. Collins' request to talk to his attorney, made after he was in custody but before he was advised of his rights, was sufficient to trigger the protection of the *Edwards* rule.

The record does not indicate that Officers Jones and Jordan knew that Collins had asked to talk to his attorney or that Officer Bayer had telephoned Collins' attorney. Their ignorance of any previous request for counsel is not significant, however. In *Edwards,* the officers who took the defendant's statement were not the ones to whom he had mentioned counsel, and the second set was unaware of his request for counsel. *See State v. Edwards,* 594 P.2d 72, 75 (Ariz. 1979). The Supreme Court nevertheless held that the later interrogation had violated Edwards' right to counsel, stating that despite his request "the police" returned to question him further. 451 U.S. at 487. There thus appears to be no "good faith" exception to the *Edwards* rule. Indeed, such an exception

would encourage incomplete communication between different groups of officers dealing with the same suspect, and would force the suspect to repeatedly reassert the right to counsel, thus "allowing repeated rounds of questioning to undermine the will of the person being questioned." *See Michigan v. Mosley,* 423 U.S. 96, 102 (1975).

Collins argues that his rights to counsel under both the fifth and sixth amendments to the United States Constitution were violated by the police's refusal to allow his attorney to speak to him and their refusal to tell him the attorney had called. Because we hold that Collins' statement must be suppressed under *Edwards,* we do not reach this argument.

*By the Court.*—Judgment reversed and cause remanded for proceedings consistent with this opinion.