STATE of Wisconsin,
Plaintiff-Respondent,

v.

Terion Lamar ROBINSON,
Defendant-Appellant.†

Court of Appeals

*No. 2008AP266–CR. Submitted on briefs February 5, 2009.
—Decided June 30, 2009.*

**2009 WI App 97**

(Also reported in 770 N.W.2d 721.)

---

† Petition to review granted 11/12/09.

690

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Beth A. Eisendrath* of *Law Office of Beth A. Eisendrath*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Michael C. Sanders*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. Terion Lamar Robinson appeals the order denying his motion to suppress and his conviction, entered following a guilty plea, for possession with intent to deliver a controlled substance—tetrahydrocannabinols (marijuana), less than 200 grams, contrary to WIS. STAT. § 961.41(1m)(h)1. (2005–06).[1] Robinson argues that the entry into the apartment where he was arrested and the seizure of the

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

Pursuant to WIS. STAT. § 971.31(10), "[a]n order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

controlled substances found there were the result of an illegal warrantless search because what the police believed was an open felony warrant was actually a commitment order that was not signed by a judge. Alternatively, Robinson argues that if we conclude that the commitment order is a warrant for purposes of the Fourth Amendment, the search was illegal because the police were obligated to obtain a search warrant before entering as Robinson was a guest in the apartment. We assume, without deciding, that the commitment order in this case would be insufficient to permit a lawful entry into the apartment to effect Robinson's arrest and the resultant search. However, extrapolating from the holding in *United States v. Leon*, 468 U.S. 897 (1984), adopted in *State v. Eason*, 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625, that evidence found in a search is subject to a good faith exception to the exclusionary rule when the police officer relied in good faith upon the search warrant's validity, we conclude that here, the officer's good faith belief that there existed an open felony warrant for Robinson's arrest is subject to the exception. In addition, because the trial court's finding that Robinson either lived or was staying at the apartment was not clearly erroneous, we affirm.[2]

## I. BACKGROUND.

¶ 2. Milwaukee Police Officer Wesam Yaghnam testified at Robinson's motion seeking to suppress evi-

---

[2] In his notice of appeal, Robinson states that he is appealing the sentence that he received. However, he did not make any appellate arguments related to sentencing; therefore, we consider the issue abandoned. *State v. Johnson*, 184 Wis. 2d 324, 344, 516 N.W.2d 463 (Ct. App. 1994) ("On appeal, issues raised but not briefed or argued are deemed abandoned.").

dence found following his arrest at an apartment. Officer Yaghnam told the court that on November 6, 2006, a citizen walked into the district police station and told him that Robinson was selling "narcotics, marijuana" from his apartment, number eight, located at 7233 North 38th Street, in Milwaukee. The citizen, who wished to remain anonymous, also told the officer Robinson's cell phone number. As a result, the officer "conducted a warrant check" which revealed that Robinson had two open warrants, "[o]ne warrant was [for] a family offense, and another warrant was for, I believe, the possession of, delivery of a controlled substance."

¶ 3.   Officer Yaghnam then wrote down the information, including the felony case number, and, accompanied by several other police officers, he proceeded to the address given by the informant. Officer Yaghnam stated that a tenant let the officers into the building and they proceeded to apartment eight, where they knocked on the door. At first no one responded, so they knocked on the door again, and while waiting, they heard noise inside the apartment which led them to believe that someone was in the apartment. Officer Yaghnam then dialed the number given as Robinson's cell phone number, and heard it ringing inside the apartment. When no one answered the phone, Officer Yaghnam knocked on the door again and a male voice replied, "Who is it?" Officer Yaghnam then responded, "Terion?" to which the voice inside the apartment said, "[y]eah." Officer Yaghnam then identified himself as a Milwaukee police officer, and said:   "You need to open the door." Officer Yaghnam explained that after he heard footsteps running from the door he decided to kick in the door because he was concerned Robinson was planning on escaping or destroying evidence.

693

¶ 4.   Once inside the apartment, Officer Yaghnam observed Robinson in the dining room, a room connected to an outside balcony. Officer Yaghnam smelled the odor of burnt marijuana when he entered the apartment, and saw marijuana on a coffee table and bags of marijuana in a cooler. Robinson was arrested and a search was conducted of the apartment. Besides the marijuana which Officer Yaghnam observed upon entering, a large amount of currency was found in the apartment, as well as paraphernalia used for weighing and packaging drugs.

¶ 5.   Robinson also testified at the hearing. He told the court that the apartment where he was arrested was his girlfriend's apartment, not his, but he did admit that he had clothing and music equipment there. He also admitted on cross-examination that he gave his address as 7233 North 38th Street (the apartment's location) when he was arrested. After Officer Yaghnam was recalled to testify *sua sponte* by the trial court, he stated that when he went to the apartment he believed that there was an open felony warrant for Robinson for possession or delivery of a controlled substance. The open felony warrant, which was actually a commitment order for nonpayment of a fine/forfeiture, was entered into the record. It bears a 1998 criminal felony court number.

¶ 6.   After ordering briefs, the trial court implicitly found that Officer Yaghnam had probable cause to believe Robinson was at the residence based upon the report of a citizen who walked into the police station and told Officer Yaghnam that Robinson, who lived at a particular apartment and had a specific cell phone number, was selling drugs. Further, the trial court found that the police officer had a good faith belief that there was an open felony warrant for Robinson when he

went to the apartment, only to later learn it was a commitment order, not signed by a judge, for nonpayment of a fine. The trial court also found the police could lawfully enter the apartment because of the existence of what Officer Yaghnam testified he believed to be an open felony warrant and the fact that the police knew Robinson was in the apartment because when they dialed his cell phone number, they heard the phone ring and Robinson identified himself as "Terion." Further, the trial court found that the apartment where the arrest and search occurred was either Robinson's or he was staying there. The trial court reasoned that the police found him at the address given by the citizen who complained about the drug dealing, who told police that Robinson lived there, and who had given the police a cell phone number which proved to be Robinson's. The trial court observed that Robinson, while claiming not to live there, conceded that he kept some personal items in the apartment and he gave that address to the police as his residence. Finally, a defense witness who testified at the suppression hearing and who was in the apartment at the time of the police entry testified that she was at "Terion's house" on the day in question.

## II. ANALYSIS.

■

¶ 7.   Robinson first argues that the search was unlawful because the police did not have a valid arrest warrant, thus rendering the search a "warrantless search and seizure." Robinson contends that because the warrant relied upon by Officer Yaghnam was, in actuality, a commitment order, not a warrant, his arrest and the resultant evidence obtained in a search of the apartment search should have been suppressed. We disagree.

¶ 8. Wisconsin Stat. § 968.04(3) governs the procedure for the issuance of a warrant. Among the mandatory provisions are the requirements that the warrant be signed by a judge. *See* § 968.04(3)1. The warrant must also state the name of the crime and the statute allegedly violated. *See* § 968.04(3)2. An officer may make an arrest without having the warrant in the officer's possession "when the law enforcement officer has knowledge that a warrant has been issued." *See* § 968.04(4)(c). On the other hand, a commitment, as set forth in Wis. Stat. § 973.07, is issued when a fine, fee, or surcharge is not paid as required by the sentence. This order commits the defendant to the county jail for sixty days, or until the amount owed is paid, or until he is discharged by due course of law. Here, the commitment was not signed by a judge.

¶ 9. "We review a motion to suppress applying a two-step standard of review." *State v. Sloan,* 2007 WI App 146, ¶ 7, 303 Wis. 2d 438, 736 N.W.2d 189. First, we will uphold the trial court's factual findings unless they are clearly erroneous. *Eason,* 245 Wis. 2d 206, ¶ 9. Then, "we review the application of constitutional principles to those facts *de novo." Id.* The Fourth Amendment protects against unreasonable searches and seizures. *State v. Richter,* 2000 WI 58, ¶ 27, 235 Wis. 2d 524, 612 N.W.2d 29. Under both the United States and Wisconsin Constitutions, a warrantless search is *per se* unreasonable, and evidence derived from it will be suppressed, subject to certain exceptions. *State v. Williams,* 2002 WI 94, ¶ 18 & n.5, 255 Wis. 2d 1, 646 N.W.2d 834; *State v. Boggess,* 115 Wis. 2d 443, 449, 340 N.W.2d 516 (1983). These exceptions are " 'jealously and carefully drawn,' " and "the burden rests with those seeking

exemption from the warrant requirement to prove that the exigencies made that course imperative." *Id.* (citation omitted).

¶ 10. One exception to the requirement that evidence derived from warrantless searches must be suppressed is set forth in the holding first articulated in *Leon* and dubbed the "good faith exception." The good faith exception initially addressed a situation where police officers executed a search warrant which turned out to be invalid. *See Leon*, 468 U.S. at 900. The purpose behind the rule is explained in *Eason*:

> According to the Supreme Court, there would be little deterrent effect from suppressing evidence obtained in objective reasonable reliance upon a warrant. The exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Leon*, 468 U.S. at 919. The police officer who reasonably relied upon a facially valid search warrant has not engaged in any misconduct that would merit future deterrence. That "officer is acting as a reasonable officer would and should act in similar circumstances." *Id.* at 920. Suppression would not "alter the behavior of individual law enforcement officers or the policies of their departments," and thus, would not provide the desired deterrence. *Id.* at 918.

*Eason*, 245 Wis. 2d 206, ¶ 32 (one citation and footnote omitted). The doctrine has been enlarged to cover police officers who take some other action based on facts the officers believe to be true, although some time later the belief proves to be incorrect. *See, e.g., State v. Collins*, 122 Wis. 2d 320, 325–27, 363 N.W.2d 229 (Ct. App. 1984). In *Eason*, our supreme court adopted the good faith exception to the exclusionary ruling, holding that "where police officers act in objectively reasonable reliance upon the warrant, which had been issued by a

detached and neutral magistrate, a good faith exception to the exclusionary rule applies." *Id.*, ¶ 74.

¶ 11. Applying the logic of the good faith exception to our facts yields a similar outcome to that of *Leon*. The trial court found that Officer Yaghnam had a good faith belief that what he discovered was an open felony warrant for Robinson's arrest. We concur. Here, the officer determined the existence of the warrant by running Robinson's name through the NCIC and CIB systems (acronyms for the National Crime Information Center and the Crime Information Bureau). *See State v. Velez*, 224 Wis. 2d 1, 6, 589 N.W.2d 9 (1999). The use of these computer data bases appears to be standard operating procedure for police departments in determining whether there are any outstanding arrest warrants on a subject. *See generally id.* at 8. In addition:

> The Wisconsin Supreme Court has held that an officer need not have an arrest warrant in his or her possession in order to make a valid arrest. The officer may rely on information received through police department channels that a warrant exists. *Schill v. State*, 50 Wis. 2d 473, 477, 184 N.W.2d 858, 860, *cert. denied*, 404 U.S. 965 (1971); [Wis. Stat. § ] 968.07(1)(b).

*Collins*, 122 Wis. 2d at 326. Like the reasoning in *Leon* and *Eason*, "[s]uppressing evidence obtained in a situation where a reasonable officer would believe an arrest warrant existed would not help to deter misconduct by arresting officers, because there is no misconduct to deter."[3] *Id.*

---

[3] Although the trial court found the officers' reliance on an eight-year-old warrant was one made in good faith, any law enforcement officer finding what appears to be an open several-year-old warrant is well-advised to investigate further.

¶ 12. However, Robinson argues that even if we determine that the entry and search were proper, we should nevertheless reverse the trial court's denial of the motion to suppress. He argues that the citizen witness who told Officer Yaghnam where Robinson was living was not sufficiently reliable to permit Officer Yaghnam to believe Robinson was a resident of the apartment. Consequently, Robinson submits that *State v. Kiper*, 193 Wis. 2d 69, 532 N.W.2d 698 (1995), relying on the holding in *Steagald v. United States*, 451 U.S. 204 (1981), obligated the police to obtain a search warrant before they could enter and arrest Robinson because he was in the home of a third party and there were no exigent circumstances. Again, we disagree.

¶ 13. The trial court rejected Robinson's contention that he was a guest in the apartment, and instead, made a finding that Robinson either lived at the apartment or was staying there. This finding was not clearly erroneous. The trial court stated that the facts here were similar to those found in *Payton v. New York*, 445 U.S. 573 (1980), a case that stood for the proposition that police may enter the residence of a person named in an arrest warrant "if they have probable cause to believe that the person named in the arrest warrant lives there and is present within." *State v. Blanco*, 2000 WI App 119, ¶ 11, 237 Wis. 2d 395, 614 N.W.2d 512.

¶ 14. In its decision, the trial court observed that the citizen who came into the police station told the officer that Robinson "was selling marijuana from *his* apartment." (Emphasis added.) The citizen knew the address of Robinson's apartment as well as his cell phone number. In addition, the trial court noted that when the police arrived at the apartment and called the cell phone number given by the citizen it rang inside

the apartment, and when the officer called out Robinson's name, he answered. The trial court noted that these facts corroborated the citizen's statements that Robinson lived at the address given by the informant and had a particular cell phone number. The trial court concluded that: "This is very, very strong evidence that the defendant was staying there or, in fact, lived there." The trial court also mentioned that this conclusion was bolstered by much of Robinson's testimony. Robinson, while denying that he lived at the apartment, did concede that he was allowed in, could let other people in, and had clothes and musical equipment in the apartment. Finally, a witness called by the defense at the motion hearing claimed she was at "Terion's house" on the date he was arrested.

¶ 15.  We agree with the trial court that the facts here did not mirror those found in either *Kiper* or *Steagald*, and instead were controlled by the facts and conclusion found in the seminal case of *Payton* and the more recent Wisconsin case of *Blanco*.

■

¶ 16.  In *Blanco*, the police, who had an arrest warrant for Blanco, entered an apartment where they believed Blanco was staying. *Id.*, 237 Wis. 2d 395, ¶ 2. The police relied on the statement of another occupant of the building, who said Blanco had been outside the apartment building smoking a cigarette just before the police arrived, and another occupant told them that Blanco had returned to the apartment. *Id.* We concluded that this information, coupled with a tip that Blanco was staying at the apartment, was sufficient information for the police to enter the apartment. *Id.*, ¶¶ 16–17, 20. "An arrest warrant authorizes the police to 'enter the suspect's residence to execute the warrant if there is reason to believe he will be found there; the

700

officer does not need a search warrant.'" *Id.*, ¶ 10 (quoting *United States v. Pallais*, 921 F.2d 684, 690 (7th Cir. 1990) (citing *Payton*, 445 U.S. at 603)).

¶ 17.  Here, the officers believed that they had a valid felony arrest warrant for Robinson. They knew that he was in the apartment and refused to open the door. They believed that Robinson lived at the apartment because two pieces of information given by the citizen were corroborated. Robinson was in the identified apartment and had the cell phone number given by the informant. When the police heard footsteps moving away from the door suggesting a possible escape attempt or a destruction of evidence, exigent circumstances were created permitting the officers to kick in the door.

¶ 18.  In sum, pursuant to *Leon* and *Eason*, the officer had a good faith belief that there was an open felony warrant for Robinson's arrest. The officer also had probable cause to believe Robinson lived at the apartment. Consequently, when Robinson identified himself but refused to open the door, the police could lawfully enter. Thus, the arrest and search were lawful. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.