In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1061

RYAN W. MILBECK,

*Plaintiff-Appellant*,

*v.*

ALLISON GEORGE, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:23-cv-00525-wmc — **William M. Conley**, *Judge*.

SUBMITTED FEBRUARY 2, 2026* — DECIDED MARCH 30, 2026

Before BRENNAN, *Chief Judge*, and HAMILTON and KIRSCH,
*Circuit Judges*.

PER CURIAM. Ryan Milbeck sued the Village of Rothschild,
Wisconsin, and Kenosha County, Wisconsin, as well as a

---

* We have agreed to decide the case without oral argument because
the briefs and record adequately present the facts and legal arguments,
and oral argument would not significantly aid the court. See Fed. R. App.
P. 34(a)(2)(C).

prosecutor and several law-enforcement officers in those jurisdictions. Invoking 42 U.S.C. § 1983, Milbeck alleges that the defendants violated his federal constitutional rights by entering his home and arresting him without a warrant or probable cause and that the defendants then maliciously prosecuted him. The district court dismissed all claims on the pleadings because the officers had probable cause to arrest Milbeck and the prosecutor was absolutely immune from suit.

We agree with the district court's determinations as to both probable cause and prosecutorial immunity. But probable cause is not, without more, a defense to a claim of unlawful warrantless entry. Milbeck has plausibly alleged that officers violated his rights under the Fourth Amendment by entering his property and arresting him on the basis of what Wisconsin officials call a "temporary felony want"—a document issued by a law enforcement officer rather than by a judicial officer. We therefore affirm in part, vacate in part, and remand for further proceedings.

I.  *Background*

We review de novo a grant of a motion to dismiss on the pleadings, and we accept all factual allegations in the complaint as true, reading them in the light most favorable to the plaintiff. *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020). We may also consider documents attached to the complaint if the plaintiff refers to them and relies upon them. See Fed. R. Civ. P. 10(c); *Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013).

According to documents attached to Milbeck's complaint, in July 2020, Milbeck's ex-wife Kendra told the Kenosha County Sheriff's Department that Milbeck was violating a

restraining order against him. Kendra told Detective Allison George that Milbeck had hacked into her email and social-media accounts. She provided log-in records showing that a phone at the location of Milbeck's home in the Village of Rothschild (more than 200 miles away in Marathon County) had made several attempts (some successful) to access her accounts. It appeared that, after logging in, Milbeck read her emails, searched her contacts, and tried to change her passwords. Kendra explained that before their separation, Milbeck had threatened to kill her if she left him, so she feared that he was trying to find out where she lived.

Detective George contacted police officers in Rothschild and asked them to speak with Milbeck at his home. When they did so, he denied trying to access Kendra's accounts.

Detective George then requested that charges be filed against Milbeck for violating the restraining order and stalking. She again contacted officers in Rothschild. They told her they would need a warrant to arrest him. According to Detective George's report, she then "placed a temporary felony *warrant*" (emphasis added) for Milbeck and told officers in Rothschild that she had done so.

A Wisconsin "temporary felony *want*" is a database alert that officers in one jurisdiction believe a suspect has committed a felony and that there is "information sufficient to support an arrest warrant, but that no arrest warrant ha[s] yet been issued." *State v. Subdiaz-Osorio*, 849 N.W.2d 748, 755 n.8 (Wis. 2014). The "want" is intended to help officers promptly apprehend suspects who may flee across jurisdictional boundaries. *Id.* at 755 n.10. And though it is essentially an electronic "wanted" poster or all-points bulletin, law-enforcement officers in Wisconsin have

interchangeably referred to this sort of document as both a "temporary felony *want*" and a "temporary felony *warrant*." See, e.g., *Henderson v. Goldbeck*, No. 23-cv-1067, slip op. at *3 (E.D. Wis. March 21, 2025) (referring to "temporary felony warrant" but noting document is not actually a warrant); *State v. Collins*, 363 N.W.2d 229, 230 n.1 (Wis. App. 1984) (noting use of both terms).

According to Milbeck, Rothschild Police Department Officers Matthew Loveless and Andrew Schroeder arrived at his home and entered without his consent, claiming they had a "warrant" for his arrest. Milbeck also alleges the officers claimed that Jeremy Hunt, the chief of the Rothschild Police Department, verified the warrant and that the officers arrested him and transported him to Kenosha County. Milbeck was charged with stalking, but the prosecutor later voluntarily dismissed the charges at the preliminary hearing.

Milbeck alleges that he later requested a copy of the warrant for his arrest from the Kenosha County Sheriff's Department, but the department's representative told him that no warrant ever existed.

Milbeck then filed this suit under § 1983 alleging the defendants violated his rights under the Fourth Amendment. He alleged that the officers arrested him with a defective warrant (claim 1), unlawfully entered his home (claim 2), falsely arrested him (claim 3), and falsely imprisoned him (claim 4). He sued supervisors at both police departments under a theory of supervisory liability (claims 6 and 7) and both Kenosha County and the Village of Rothschild under a theory of municipal liability for failing to train their officers (claim 9). He also sued all defendants for malicious prosecution (claim 5). And he asserted a claim under 42 U.S.C.

§§ 1985 and 1986 alleging that several officers conspired to violate his rights and/or neglected to prevent the violations of his rights (claim 8).

Under Rule 12(b)(6), the district court dismissed all claims for failure to state a claim. The court treated Milbeck's theories of defective warrant, unlawful entry, false arrest, and false imprisonment as one consolidated claim for false arrest and imprisonment in violation of the Fourth Amendment. The court then concluded that Milbeck's arrest was supported by probable cause, which is an absolute bar to false arrest claims arising under § 1983, and dismissed all claims relating to his arrest. The court dismissed the malicious prosecution claim because Milbeck could not show that he was charged without probable cause. The court also dismissed the supervisory liability claims because Milbeck failed to allege that any supervisor played a personal role in his arrest. The court dismissed the claims under §§ 1985 and 1986 because Milbeck failed to allege any factual details of any conspiracy to deprive him of equal protection of the laws. And though the prosecutor did not appear or file a response to Milbeck's complaint, the court dismissed the claims against her because prosecutors enjoy absolute immunity from civil suit for initiating charges or presenting a case on behalf of the state. Finally, the court reasoned that because Milbeck failed to state a claim against any individual defendant, he could not establish municipal liability for failure to train under § 1983.

## II. *Discussion*

We granted Milbeck's motion for leave to proceed on appeal in forma pauperis, noting that his claim that the police unlawfully entered his home under the auspices of the temporary felony "want" was potentially viable. Milbeck

presses that issue, arguing that the temporary felony "want" was not a valid warrant and that the district court improperly dismissed his unlawful entry and unlawful arrest claims. We agree in part.

A possible source of confusion was the district court's decision to treat as duplicative Milbeck's claims alleging that officers secured a defective warrant (claim 1), unlawfully entered his property (claim 2), unlawfully arrested him (claim 3), and falsely imprisoned him (claim 4). The district court explained that it did so because the claims "stem from the same operative facts and allege the same injury." That's true, but an unlawful entry pursuant to a defective or non-existent warrant is an actionable wrong distinct from an allegedly unlawful arrest. "Fourth Amendment claims for unlawful entry [and] unlawful arrest or detention … are separate claims that focus on different points in a law enforcement officer's interaction with the plaintiff." *Dukes v. Sheriff of Levy County*, 155 F.4th 1291, 1300 (11th Cir. 2025). We therefore analyze claims challenging the legality of the home entry separately from those alleging unlawful arrest and detention. See, e.g., *Muhammad v. Pearson*, 900 F.3d 898, 904, 907 (7th Cir. 2018).

A.  *Unlawful Entry Claims*

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures, and the "sanctity of a person's living space" stands at the core of the Fourth Amendment. *Lange v. California*, 594 U.S. 295, 303 (2021). "[P]hysical entry of the home is the chief evil against which … the Fourth Amendment is directed," and "the warrant procedure minimizes the danger of needless intrusions of that

sort." *Payton v. New York*, 445 U.S. 573, 585–86 (1980) (citations omitted).

Warrantless searches and seizures inside a home, including arrests, are therefore presumed to be unreasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971); *Gaetjens v. City of Loves Park*, 4 F.4th 487, 491–92 (7th Cir. 2021) (citations omitted). "[P]olice officers may not constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have probable cause." *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001), citing *Payton*, 445 U.S. at 585–90; see also *Hawkins v. Mitchell*, 756 F.3d 983, 991–92 (7th Cir. 2014). When there is time to secure a valid warrant, then, officers who choose not to do so risk violating constitutional rights. *Sparing*, 266 F.3d at 691.

A fundamental principle of Fourth Amendment law is that a valid warrant may be issued only by a "neutral and detached magistrate" upon a showing of probable cause, not by an "officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948); accord, e.g., *United States v. Hueston*, 90 F.4th 897, 902 (7th Cir. 2024); *United States v. Harris*, 464 F.3d 733, 737–38 (7th Cir. 2006). Allowing the police to issue warrants to themselves would "reduce the [Fourth] Amendment to a nullity." *Johnson*, 333 U.S. at 14. That would be the effect of treating "temporary felony wants" as if they were warrants.

Milbeck has plausibly alleged that his Fourth Amendment rights were violated when the officers entered his home without a valid warrant. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 8(a). Milbeck alleged that Detective George secured a document that she told other officers was a

"temporary warrant," but that document was not an arrest warrant issued by a judicial officer and thus was facially defective. Under the Fourth Amendment, an arrest warrant may be issued only by a neutral and detached magistrate, *Johnson*, 333 U.S. at 14, upon an affidavit describing information sufficient to establish probable cause, *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 564–65 (1971), and particularly describing the person to be arrested, *Powe v. City of Chicago*, 664 F.2d 639, 645 (7th Cir. 1981). See also *Giordenello v. United States*, 357 U.S. 480, 485–86 (1958) (warrant requirement applies equally to arrests and searches). A temporary felony "want" may name the person to be arrested, but it fails the other two requirements: it is issued by an investigating officer rather than a neutral magistrate, and it lacks a statement describing the facts establishing probable cause. Even if the latter omission might be correctable, the difference between a judge-issued warrant and a police-issued "want" can be cured only by obtaining a warrant from a judge.

Milbeck alleges that Officers Schroeder and Loveless entered his home pursuant to that facially defective "want," without exigent circumstances or consent. No allegations in the complaint indicate that a valid warrant for Milbeck's arrest actually existed. To the contrary, Milbeck alleged that a representative of the Kenosha County Sheriff's Department told him that no warrant ever existed, and the use of a temporary felony "want" implies that no valid warrant has yet issued. *Collins*, 363 N.W.2d at 230 n.1. Milbeck has plausibly alleged that the officers' entry into his home to make a routine arrest without a valid warrant, consent, or exigent circumstances violated his rights under the Fourth Amendment. *Id.* at 231–32 (suspect's arrest in his home

pursuant to temporary felony "want" and without exigent circumstances violated Fourth Amendment)*;* see also *State v. Burrows*, 925 N.W. 2d 789 (table), 2018 WL 6788157 at *5 (Wis. App. Dec. 26, 2018) (noting arrest pursuant to a "want" is constitutional so long as it is not used to enter a defendant's property); *State v. Ott*, 870 N.W. 2d 247 (table), 2015 WL 4633358 at *1–2 (Wis. App. Aug. 5, 2015) (noting that trial court concluded that "warrant" was a "misnomer" in this context).

The defendants offer two arguments in response. First, relying on facts in Officer Schroeder's police report, which Milbeck attached to his notice identifying the arresting officers, they argue that the officers did not need a warrant because upon a valid arrest outside a home, officers are entitled to enter the home with the arrestee to gather the arrestee's personal belongings. See *Washington v. Chrisman*, 455 U.S. 1, 6–7 (1982). Second, the defendants claim the individual officers are entitled to qualified immunity because it is not clearly established that a temporary felony "want" is insufficient to allow police to enter a suspect's home.

Defendants have failed to preserve either argument for this appeal because they did not present either to the district court. See *Bradley v. Village of University Park*, 59 F.4th 887, 897–98 (7th Cir. 2023) (appellees may waive arguments by not raising them in the district court); *Henry v. Hulett*, 969 F.3d 769, 786–87 (7th Cir. 2020) (en banc) (defense of qualified immunity not preserved for appeal when party failed to raise it before the district court). Nor do the defendants advance any defense they raised before the district court or defend the district court's reasoning. See *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020). Thus, they have provided no factual or legal basis to convince us that Milbeck's allegations—which

we must accept as true at this stage of the case—fail to state a plausible claim. See *Iqbal*, 556 U.S. at 678.

B. *Monell Claims*

For these reasons, we must also conclude that Milbeck has plausibly alleged that Kenosha County and the Village of Rothschild could be liable for failing to train officers on the difference between a temporary felony "want" and a valid warrant (claim 9).

Municipalities are not vicariously liable for the torts of their employees or agents, but a plaintiff can establish municipal liability under § 1983 when the "execution of a government's policy or custom" caused a violation of the plaintiff's rights. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691–94 (1978). Such a claim has three elements: municipal policy or custom, municipal fault, and causation. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022). In some circumstances, a municipality's failure "to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality may be held liable for such a failure to train if the plaintiff shows that the municipality was deliberately indifferent to his constitutional rights. *Bohanon*, 46 F.4th at 675 (citations omitted).

Establishing deliberate indifference ordinarily requires the municipality to be on notice of constitutional violations, but the Supreme Court has explained that the consequences of failing to train employees "could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64;

see also *J.K.J. v. Polk County*, 960 F.3d 367, 380–85 (7th Cir. 2020) (en banc). A plaintiff must also show a causal link between the policy or custom and the violation. *Bohanon*, 46 F.4th at 675–76 (citations omitted).

Milbeck has plausibly alleged *Monell* claims against both the Village of Rothschild and Kenosha County for the arresting officers' allegedly unlawful entry into his home. He contends that the Village and County each maintained what amounts, for purposes of *Monell*, to a policy of failing to train officers adequately on the constitutional limits of home entry, including the components of a lawful warrant and the critical constitutional difference between a judge-issued warrant and a police-issued temporary felony "want." The municipalities might be at fault for such inadequate training when, as may be the case here, it would have been obvious that it could lead to violations of constitutional rights (namely unlawful entries into suspects' homes). See *Connick*, 563 U.S. at 64; *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *J.K.J.*, 960 F.3d at 380–85; *Gibson v. City of Chicago*, 910 F.2d 1510, 1521 (7th Cir. 1990). Milbeck has alleged that the inadequate training caused the officers to violate his rights by unlawfully entering his home to arrest him.

The record bolsters the plausibility of his allegations. After local officers requested an arrest warrant, Detective George wrote that she "placed" a warrant, and Officers Schroeder and Loveless told Milbeck that they had a warrant for his arrest. Yet Detective George was not empowered to issue a warrant and, according to a representative of the Kenosha County Sheriff's Department, no warrant for Milbeck's arrest existed. What's more, the temporary felony "warrant" states at the top of the page: "This entry requires knowledge by law

enforcement that a felony was committed and who the person was that committed the felony *but no warrant has been issued yet*." (Emphasis added.) Milbeck also attached a Wisconsin Department of Justice training manual to his complaint. It explains that, after a temporary felony "want" is issued: "The entering agency must actively pursue obtaining a warrant within 48 hours." And as noted, other courts have observed that law-enforcement officers in Wisconsin refer to temporary felony "wants" as "temporary felony warrants."

To be clear, we offer no opinion on the underlying merits of Milbeck's claims. Milbeck may not be able to show that the officers unlawfully entered his home or that the municipalities' training was so inadequate that it constituted deliberate indifference. But taking his factual allegations as true, as we must, he must be given the opportunity to conduct discovery and to offer evidence on these issues.

C.  *Remaining Claims*

Milbeck also maintains that he was arrested without probable cause, and he argues that the district court wrongly dismissed his claims alleging unlawful arrest and malicious prosecution. We agree with the district court that the officers had probable cause to arrest Milbeck, which is an absolute defense to any § 1983 claim against a police officer for unlawful arrest, false imprisonment, and malicious prosecution. See *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015); see also *Taylor v. Hughes*, 26 F.4th 419, 432 (7th Cir. 2022) (unlawful arrest). Milbeck's apparent repeated attempts to access Kendra's accounts, to read private information, and to change her passwords, coupled with his prior threats, were sufficient for a reasonable officer to believe that Milbeck was harassing and stalking his ex-wife.

Milbeck attacks the officers' probable cause on the basis that Kendra may have been untruthful. But that attack misses the legal target. Detective George was entitled to rely on Kendra's assertions and the records she provided to support those assertions, leaving for prosecutors and courts further evaluation of Kendra's credibility or the veracity of her statements. See *Garcia v. Posewitz*, 79 F.4th 874, 880 (7th Cir. 2023). In turn, the arresting officers were entitled to rely on Detective George's knowledge, which was sufficient to establish probable cause. See *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018).

Further, as the district court explained, the prosecutor who filed charges against Milbeck is absolutely immune from civil suit under § 1983 for initiating a prosecution and presenting the state's case. *Kalina v. Fletcher*, 522 U.S. 118, 125–26 (1997); *Atkins v. Gilbert*, 52 F.4th 359, 361 (7th Cir. 2022).

Finally, Milbeck argues that if we find that he stated any claims against the individual officers, we should revive his claims alleging supervisory liability (claims 6 and 7) and liability under §§ 1985 and 1986 (claim 8). To hold supervisors liable under § 1983, the supervisors must be personally involved in violating the plaintiff's rights and deliberately indifferent to those rights. *Bostic v. Murray*, 160 F.4th 831, 841–42 (7th Cir. 2025). They cannot be held liable for their subordinates' conduct under a theory of vicarious liability. *Id.* at 840–41. Milbeck has plausibly alleged that Chief Hunt was personally involved in his arrest by erroneously verifying for the arresting officers that a valid warrant had been issued. Accepting Milbeck's allegations as true, we must also assume Chief Hunt had a sufficiently culpable state of mind. Any reasonable supervisor would have recognized that no valid

warrant had been issued and would have directed the arresting officers not to enter Milbeck's home.

But Milbeck has failed to allege plausibly that Detective George's supervisors are liable for violating his rights. Though he alleges they approved of the temporary felony "want" Detective George issued, he has not alleged that they knew she intended to treat the "want" as a substitute for a valid warrant for an in-home arrest.

Finally, the district court did not err in dismissing Milbeck's claims under §§ 1985 and 1986. Milbeck has not alleged any facts plausibly alleging a conspiracy to deprive him of equal protection of the laws, as he must to establish liability under § 1985. See *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000). Absent a viable claim under § 1985, his claim under § 1986 also fails. See *Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016).

\* \* \*

We therefore AFFIRM the district court's judgment dismissing claims 3–6 and 8, VACATE the judgment as to claims 1, 2, 7, and 9, and REMAND for proceedings consistent with this opinion. We DENY Milbeck's request that we order assignment to a different judge on remand.